**In re Brenda Lee WALLERT, Debtor.**

**No. 05–90789.**

United States Bankruptcy Court,
D. Minnesota.

Nov. 17, 2005.

Mark C. Halverson, Halverson Law Office, Mankato, MN, for Debtor.

GREGORY F. KISHEL, Chief Judge.

This is a Chapter 13 case, commenced after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8 ("the Act"). It comes on before the Court in chambers, for a consideration of whether the Debtor has met the eligibility requirement of 11 U.S.C. § 109(h)—a provision that was added to the Bankruptcy Code by the Act.

## POSTURE OF CASE

1. On November 2, 2005, the Debtor filed the petition that commenced this case, in electronic format via the Court's CM/ECF capacity for remote filing of documents. The Debtor was represented by counsel, Mark C. Halverson, Esq., of Mankato.

2. In her submission, the Debtor made a so-called "partial filing" under Fed. R. Bankr.P. 1007(c). The petition pages were not in the form required by the Interim Rules adopted by this Court in conformity with the Act.

3. In her submission, the Debtor did not present a certificate from an approved nonprofit budget and credit counseling agency, attesting to the receipt by the

Debtor of certain services (a "briefing" regarding credit counseling available to the Debtor and a "related budget analysis"), as required by 11 U.S.C. § 109(h)(1) and Interim Bankr.R. (D.Minn.) 1007(b)(3) and 1007(c).

4. Via a separate document, docket no. 2, the Debtor submitted a "Certificate Requesting Exemption from Credit Counseling Briefing." The Debtor subscribed this document under penalty of perjury. In it, she states the following:

a. "[The] foreclosure sale of [her] homestead real estate was scheduled for 10:00 a.m. on November 2, 2005." [1]

b. The Debtor "was first advised to seek bankruptcy counsel by Southern Minnesota Regional Legal Services on November 2, 2005 at approximately 2:00 p.m . . . . ."

c. At approximately 3:00 p.m. on November 2, 2005, the Debtor contacted the attorney who filed her Chapter 13 petition. He "advised [her] to attempt to obtain credit counseling prior to filing a Chapter 13 bankruptcy."

d. When, "at that point in time, Lutheran Social Services in Mankato was contacted," the Debtor "was told that [she] could not obtain credit counseling on such short notice and would have to make an appointment for counseling at a later date."

e. After that, the Debtor contacted an entity called "Springboard Non-profit Consumer Credit Management, Inc.," and "was told there was a $50.00 fee to proceed with counseling."

f. The Debtor "at that point determined it was not possible to get credit counseling immediately."

g. Because "the foreclosure sale was imminent," the Debtor and her attorney decided to proceed with filing under Chapter 13.

h. The Debtor "had no advance knowledge that [she] should pursue credit counseling."

i. "It is [the Debtor's] intention to obtain the Credit Counseling Briefing Certificate soon," and she "believe[s][she] will be able to do so within [a] thirty (30) day period . . . ."

j. The Debtor "believe[s] . . . that sufficient cause does not exist to dismiss [this case] for not completing the briefing before filing."

## STRUCTURE OF GOVERNING LAW

1. 11 U.S.C. § 109(h)(1), enacted by the Act and effective for all bankruptcy filings made on or after October 17, 2005, requires an individual debtor to have received certain services from "an approved nonprofit budget and credit counseling agency," during the 180–day period preceding the date on which such a debtor files a bankruptcy petition.[2]

2. 11 U.S.C. § 521(b)(1) requires such a debtor to file a certificate from that agency, "describing the services provided to the debtor," as part of the documents to be submitted in connection with the commencement of the case. This document "shall be filed with the petition in a voluntary case." Interim Bankr.R. (D.Minn.) 1007(b)(3) and 1007(c).

3. Under 11 U.S.C. § 109(h)(3), a debtor may be exempted from the requirement

---

1. This is the date that appears in the original. It does not make sense against the Debtor's remaining recitations of dates. Perhaps this reference is an error.

2. All further statutory citations will be to the text of the Code as it stands after the effective date of the Act.

of receiving those services before the bankruptcy filing, on certain very narrow and specific grounds.

4. Facts to satisfy those grounds must be set forth in a written certification by the debtor. 11 U.S.C. § 109(h)(3)(A). If a debtor is seeking this exemption, she must file this certification in lieu of a credit counseling agency's certificate. Again, however, this certification must be filed "with the petition in a voluntary case." Interim Bankr.R. (D.Minn.) 1007(b)(3) and 1007(c).[3]

5. The certification required by 11 U.S.C. § 109(h)(3)(A) must:

a. "describe[ ] exigent circumstances that merit a waiver" of the requirement of pre-petition credit counseling, 11 U.S.C. § 109(h)(3)(A)(I);

b. "state[ ] that the debtor requested credit counseling services" from such an agency, "but was unable to obtain the services ... during the 5–day period" beginning on the date of the debtor's request, 11 U.S.C. § 109(h)(3)(A)(ii); *and*

c. be "satisfactory to the court," 11 U.S.C. § 109(h)(3)(A)(iii).

6. The "exemption" from the requirement of receiving credit counseling services in connection with a bankruptcy filing is not permanent. It only lasts for 30 days after the filing of the bankruptcy petition, subject to a 15–day extension "for cause." 11 U.S.C. § 109(h)(3)(B).

7. The "briefing" by a credit counseling agency may be "conducted by telephone or on the Internet ..." 11 U.S.C. § 109(h)(1).

8. To be "approved" by the United States Trustee for the provision of services to debtors, a credit counseling agency "shall, at a minimum ... provide [budget and credit counseling] services without regard to the ability to pay the fee," if it does charge a fee for the services. 11 U.S.C. § 111(c)(2)(B).

## CONCLUSIONS OF LAW

■ 1. The Debtor's statements identify a circumstance, an impending sheriff's sale in foreclosure of a mortgage against her homestead, that in isolation is "exigent," as contemplated by 11 U.S.C. § 109(h)(3)(A)(i).

2. The Debtor is vague as to the nature of what she said to either of the credit counseling agencies that she contacted. However, her statement still supports the inference that she made a pre-petition request for briefing and counseling services from both agencies, as contemplated by 11 U.S.C. § 109(h)(3)(A)(ii).

■ 3. However, the Debtor has not established that she was unable to obtain the pre-petition briefing and counseling services "during the 5–day period" beginning with November 2, 2005, the date on which she made her requests.

---

3. The Debtor's counsel titles his client's statement a "certificate." Under the statute's very specific words, this terminology is incorrect. A debtor's request for an exemption under 11 U.S.C. § 109(h)(3)(A) is made by certific*ation.* The statement of a credit counseling agency that a debtor has completed pre-petition briefing and evaluation is called a "certificate." There is no apparent basis for the distinction in nomenclature on the face of the Act. Nonetheless, if anything is to be gleaned from the facial complexity of so many of the Act's provisions, it is that the very devil is in the details. Counsel and court alike must carefully parse through the verbiage of the Act, word by word, for all applications of *its* provisions. Despite the minor error in nomenclature, the Debtor's submission passes muster as a "certification" on its form; it is subscribed by her, with a declaration that the content is true and correct and that she is under penalty of perjury in making the statements in it. *See* 28 U.S.C. § 1746.

4. An inability to timely obtain services from a credit counseling agency, with the timeliness expressly defined in terms of such a 5–day "window," is one of the specific requirements for a temporary "exemption" from the requirement of a pre-petition briefing and counseling services. 11 U.S.C. § 109(h)(3)(A)(ii).

5. Because the Debtor has not evidenced that she was unable to obtain the services in a timely manner as contemplated by the Act, she does not qualify for the temporary exemption.

6. Put another way, because the Debtor's certification lacks proof of one of the statutory requirements for an exemption, it cannot be "satisfactory to the court," as required by 11 U.S.C. § 109(h)(3)(A)(iii).

7. Thus, because the Debtor has not met the requirements of 11 U.S.C. § 109(h)(3)(A), she is not entitled to the temporary exemption from the requirement of 11 U.S.C. § 109(h)(1).

8. Because the Debtor has not evidenced her pre-petition compliance with 11 U.S.C. § 109(h)(l), and because the Debtor has admitted to the court that in fact she did not comply with the requirement of pre-petition credit counseling, she "may not be a debtor under" the Bankruptcy Code, 11 U.S.C. § 109(h)(1).

9. The Debtor therefore is not eligible for relief under Chapter 13 under color of the petition that she filed to commence this case.

10. This lack of eligibility is an incurable defect in the Debtor's petition, arising from facts presented by the Debtor herself. Thus, there is cause to dismiss this case without further delay.

## DISCUSSION

This is a harsh result. From a layperson's perspective, the rationale that led to it is counter-intuitive, at least in parts. However, there is literally no other possible outcome, when the very specific, non-discretionary terms of the Act are applied just as they read.

As part of the Act, Congress mandated all individual debtors who seek bankruptcy relief to go through a consultation with an approved credit counseling professional. This consultation is to consist of a "briefing" as to "opportunities for available credit counseling" and a "related budget analysis." The preferred course is that the consultation is done pre-petition, during the 180 days before the bankruptcy filing. The consultation may be done post-petition, as long as it is completed within 45 days after a bankruptcy filing at the very latest. However, a post-petition consultation may be done only by leave of the court. That leave, termed an "exemption" by § 109(h)(3)(B), is to be granted only for a bankruptcy filing that is prompted by "exigent circumstances." Further, it is to be granted only to debtors who actually tried to obtain the counseling pre-petition, via an actual request to a credit counseling agency, but who were unable to get the counseling service promptly enough against the backdrop of the "exigent circumstances."

The Debtor's request for the exemption fails at this point. Under § 109(h)(3)(A)(ii), the Debtor had to attest to being unable to get her briefing and counseling services for at least five days after she requested them from an agency. The Debtor only attested to not being able to get them immediately, "on such short notice" as she was affording in the mid-afternoon of November 2 in light of the sheriff's sale set for the next day. This is not enough to meet the requirement for the exemption.

By its structure, the Act tacitly grants credit counseling agencies five days of lee-

way to service debtors on request.[4] One could argue quite cogently that Congress did not act realistically or fairly in this grant. Ultimately, though, the structuring of this requirement was a matter of policy, committed in the first instance to Congress and not one that the courts may second-guess on its merits. *Mansell v. Mansell*, 490 U.S. 581, 594, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) ("Our task is to interpret the statute as best we can, not to second-guess the wisdom of the congressional policy choice."); *Rodriguez v. United States*, 480 U.S. 522, 526, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987) (*per curiam*) ("Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice."); *South Dakota v. U.S. Dept. of Interior*, 423 F.3d 790, 795 (8th Cir.2005) ("The Court has 'almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law.' ") (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474–475, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001)).

In any event, it is possible to identify a goal behind this structure, one that does not pass the bounds of reasonableness. Beyond that, one can envision instances in which the applicability of the five-day turnaround period will not functionally prejudice a debtor's eligibility.

Congress's goal seems to be to discourage the practice of hastily filing for bankruptcy, even if that be in the face of foreclosure, repossession, or garnishment, and to discourage debtors from deferring their first consideration of bankruptcy until the very eve of such decisive events in the exercise of creditors' remedies.[5]

■ Going through the several postures in which a debtor could be, there are at least a few where an inability to find a promptly-responsive credit counseling agency would not prevent a bankruptcy filing. Let us assume that a debtor was facing the prospect of a sheriff's sale scheduled for three days hence, and consulted counsel today. If that debtor found no counseling agency that could consult and produce earlier than six days from today, the debtor could attest to those facts via certification, and file for bankruptcy relief. In that instance the debtor would be entitled to the protection of the court for the term of the 30–day exemption–during which time the briefing and counseling could take place.

The dicier prospect, of course, is where such a debtor could not obtain the briefing and counseling service until, say, four days from today-one day too late to interpose the automatic stay in bankruptcy against the foreclosure sale, but nonetheless one day short of the five-day turnaround period contemplated by § 109(h)(3)(A)(ii). In that case, unavoidably, the debtor would not qualify for the temporary exemption, because he could not attest to the very specific characteristics of an inability to obtain the services that the statute recites on its face.

---

4. It is here, and for this reason, that the counter-intuitiveness of § 109(h)(3)(A) is suggested, at least in a very superficial sense: how "exigent" could any claimed circumstances be, if the statute appears to impose a weight of five-plus days on a debtor before he may go to the court, counseling certificate in hand, to file for bankruptcy relief?

5. This pattern of deferral, avoidance, and precipitation is, of course, present in this very case. The Debtor took no action to investigate her options in bankruptcy, until she was faced with the imminent loss of her fee title and was about to be reduced to the status of redemptioner with a large and accelerated cost of regaining that title.

The distinction between these two scenarios, however, does not mean that the statute in application results in an irrational or chimerical outcome. The application admittedly falls heavily on the debtor who acts less proactively, but what does that say? Only that a sand-stuck posture, stargazing for fear of confronting the basilisk, or any other sort of avoidance behavior-the failure to think proactively and to consult attorney and credit counselor with at least a six-day horizon-will likely deprive such debtors of eligibility to muster bankruptcy remedies against the very creditor action that so threatens them. The statute does nothing more than mandate debtors to recognize and start dealing with their straits of insolvency squarely, at least a week before they will bloom out to an actual, permanent economic loss. As Congress clearly contemplated, within that week one would either lay the eligibility issue to rest by snagging the counseling agency's certificate, or would qualify for the temporary exemption and, in tandem, lay the groundwork to get the briefing and counseling promptly after filing for bankruptcy.[6]

The application of § 109(h), as thus read, falls heavily on one subset of debtors-particularly at present, in the early stages of a transition to a new bankruptcy law regime. Nonetheless, because the requirements of the statute are so clear and so exacting on their face, and because they dovetail with a rational divination of congressional intent, it simply is not open to the courts to depart from their express terms. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980) (statutory language must be regarded as conclusive, absent "a clearly expressed legislative intention to the contrary," and the courts must apply it as such); *In re Ophaug,* 827 F.2d 340, 342 (8th Cir.1987); *In re LaPorta,* 332 B.R. 879, 884, 2005 WL 3078507 (Bankr.D.Minn. 2005); *In re Kostecky,* 111 B.R. 823, 827 (Bankr.D.Minn.1990) ("In the absence of a clearly expressed legislative intention to the contrary, the unambiguous language of a statute is to be regarded as conclusive.").

█ In the end, the statute is simple. The performance of credit counseling prepetition is a first-level requirement for any individual who seeks bankruptcy relief. That prerequisite may be overridden, and the court may permit the credit counseling to be obtained post-petition. However, this is possible only if a debtor certifies that she meets the requirements of 11 U.S.C. § 109(h)(3)(A), in their exacting detail. If such a debtor does not submit this certification with her petition for bankruptcy, in proper form, and with content evidencing the statute's substantive requirements in a way "satisfactory to the court," the first-level requirement is not overridden. When that is the case, a debtor must show, as part of her initial filing, that she has received credit counseling pre-petition. That is done by "fil[ing] with the court" the credit counseling agency's certificate that it provided described services to the debtor, with her petition for bankruptcy.

---

**6.** Does this leave debtors subject to the vagaries of local agencies' *de facto* ability to promptly provide pre-petition briefing and counseling services? Perhaps. But in expressly countenancing service provision "by telephone or on the Internet," 11 U.S.C. § 109(h)(1), Congress seemed to afford an out-at least if the marketplace develops vectors to obtain the service in that manner, immediately and in real time, to meet the needs of debtors who are in serious emergencies. (The means and timing of payment for such service and the in-hand provision of a certificate are other matters entirely, but they are not relevant to the discussion at bar.)

Congress placed these requirements in 11 U.S.C. § 109, the Code's provision that governs the fundamental eligibility to "be a debtor." That statute identifies who may file a petition for bankruptcy relief in the first place and-by exclusion-who may not do so. Beyond that, § 109(h) contains an express prohibition: an individual who does not satisfy its prescriptions "may not be a debtor." When a debtor's petition is not accompanied by proof that the debtor has gone through credit counseling pre-petition, or proof of a specified excuse for not doing so, that person simply cannot proceed to receive the complex of relief available under any chapter of the Bankruptcy Code.

On its face, 11 U.S.C. § 707(a) requires "cause" before a petition under Chapter 7 may be dismissed. A lack of statutory eligibility to "be a debtor," if it goes to a default on the part of the debtor that is incapable of cure under the very terms of the Code, is the very most fundamental "cause" for dismissal.

## ORDER

On the decision just memorialized,

IT IS HEREBY DETERMINED AND ORDERED:

1. Debtor Brenda Lee Wallert is not eligible for relief under the Bankruptcy Code in this case.

2. This case is dismissed, without prejudice to the Debtor's right under governing law to file another petition for relief under the Bankruptcy Code.