**In re Estephen & Angela COBB, Debtors.**

**No. 2:06–bk–10814.**

United States Bankruptcy Court,
E.D. Arkansas,
Helena Division.

May 22, 2006.

Angela S. Cobb, Forrest City, AR, pro se.

Estephen N. Cobb, Forrest City, AR, pro se.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On March 10, 2006, Estephen and Angela Cobb ("Debtors") filed a voluntary petition for relief under the provisions of Chapter 13 of the United States Bankruptcy Code. The petition was filed pro se. Accompanying the face sheet of the petition, which was filled out by hand, was a typewritten matrix that listed twelve creditors. Also filed on March 10 was a typed statement alleging the following facts:

1. The holder of the mortgage on the Debtors' home was listed on their schedules as HSBC

We Angela and Estephen Cobb, request a waiver of the requirement to obtain debt and credit counseling due to the March 13th sale date on our home. We are filing an emergency petition to save our home. We have an appointment with Credit Counseling of America (1–800–889–4916) on Thursday, March 16th at 4:15 but were unable to get anything sooner from any of the approved agencies. We will provide the certificate to the court at that time.

(Debtor's Ex. 1.)

This statement, dated March 9, 2006, was signed by the Debtors, although not under oath. The statement was entered on the docket as a request for a waiver of the requirement dictated by 11 U.S.C. § 109(h)(1) that a debtor must obtain credit counseling prior to filing a petition in bankruptcy.

The request for waiver was set for hearing on March 24, 2006, at Little Rock, Arkansas. By the date of the hearing, Debtors had employed counsel. The certificate of credit counseling was filed March 24, 2006, which reflected that the credit counseling occurred on March 16, 2006, six days after the case was filed. At the hearing, the U.S. Trustee appeared and orally objected to the waiver, but no creditor objected. Ms. Mary Jane Pruniski, who represented the Chapter 13 Standing Trustee, was present in the courtroom on other business and stated that she had no objection.

The Debtor Angela Cobb testified in support of her request for waiver. She stated that her husband had lost his job and had received a letter from the attorney for their mortgage lender advising them of a pending foreclosure sale.[1] She

Mortgage Service of Carol Stream, Illinois.

said she and her husband tried to find a lender to refinance or restructure their loan, and when they were unsuccessful they filed the Chapter 13 petition pro se.

Ms. Cobb at first testified that she and her husband prepared the statement requesting the waiver of credit counseling; she even stated that she had no help in preparing the statement. (Tr. at 12.) However, on questioning by the Court, Ms. Cobb stated that after the foreclosure action was commenced, she and her husband received a letter from a business called Happy Home Consulting, an entity offering to help in dealing with the mortgage company. Ms. Cobb, who is very unsophisticated, was not certain exactly what services Happy Home was providing on their behalf. She testified that she thought Happy Home was a mortgage company "who was to get us the information we needed to retain our home." (Tr. at 13.) She stated that she paid Happy Home a fee of $700 to negotiate with the mortgage company. She further testified that about a week before the petition was filed, "Miss Kathy" from Happy Home called and said there was nothing more they could do and assisted the Debtors in preparing the waiver of pre-bankruptcy credit counseling. She said that the person named Kathy filled out the request for a waiver while they talked on the phone.

### DISCUSSION

The Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 now provides the following:

(h)(1) Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section, an individual may not be a debtor under this title unless such individual has, during the 180–day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

11 U.S.C.A. § 109(h)(1) (West, Westlaw through Oct. 17, 2005).

The Bankruptcy Code also provides the following exception to the requirement to obtain credit counseling prior to filing a bankruptcy petition:

(3)(A) Subject to subparagraph (B), the requirements of paragraph (1) shall not apply with respect to a debtor who submits to the court a certification that—

(i) describes exigent circumstances that merit a waiver of the requirements of paragraph (1);

(ii) states that the debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in paragraph (1) during the 5–day period beginning on the date on which the debtor made the request; and

(iii) is satisfactory to the court.

11 U.S.C. § 109(h)(3)(A) (West, Westlaw through Oct. 17, 2005).

 In order to waive the pre-bankruptcy credit counseling requirement, the Debtor must satisfy each of the three requirements of 11 U.S.C. § 109(h)(3)(A). Further, the requirements in (i) and (ii) must be submitted to the court by a "certification."

The threshold issue to consider is whether the Debtors have filed a "certification" at all. The term "certification" is not defined by the Bankruptcy Code. This

issue was discussed in the case of *In re Curington,* where the court stated:

> According to the relevant definition in Black's Law Dictionary, a certification is "1. The act of attesting. 2. The state of having been attested. 3. An attested statement." Black's Law Dictionary 220 (7th ed.1999). The same source defines "attest" as "1. To bear witness; testify <attest to the defendant's innocence>. 2. To affirm to be true or genuine; to authenticate by signing as a witness <attest the will>." *Id.* at 124. Similarly, Webster's Third New International Dictionary defines "certify" as "to attest esp. authoritatively or formally." Webster's Third New International Dictionary 362 (2002). Based on these definitions, a certification is, at a minimum, a written statement that the signer affirms or attests to be true.

*In re Curington,* No. 05–28188, 2005 WL 3752229, at *4 (Bankr.E.D.Tenn. Dec.19, 2005)(citing *In re Cleaver,* 333 B.R. 430, 433–34 (Bankr.S.D.Ohio 2005)).

Several courts have concluded that the certification required by Congress must be signed by the debtor, who must attest or affirm that the statements contained in the request for a waiver are true. *In re Rodriguez,* 336 B.R. 462, 469–70 (Bankr.D.Idaho 2005) (stating that the certification must be sworn to personally by the debtor; a simple motion by the debtor's attorney will not meet the requirements of 11 U.S.C. § 109(h)(1)); *In re La Porta,* 332 B.R. 879, 882 (Bankr.D.Minn.2005) ("Because they [two unsigned written statements] are not subscribed under penalty of perjury ... they do not constitute a 'certification' as 11 U.S.C. § 109(h)(1) expressly requires."); *In re Wallert,* 332 B.R. 884, 887 n. 3 (Bankr.D.Minn.2005) (determining certification complied with the statute because "it is subscribed by [the debtor], with a declaration that the content is true

and correct and that she is under penalty of perjury in making the statements in it.")(citing 28 U.S.C. § 1746 (2000)).

Other courts have taken a less literal approach and allowed certifications that are not actually sworn to under penalty of perjury. *In re Henderson,* 339 B.R. 34, 38 (Bankr.E.D.N.Y.2006)(determining certification need not be made under penalty of perjury); *In re Graham,* 336 B.R. 292, 296 (Bankr.W.D.Ky.2005)(interpreting "certification" to mean simply that a debtor must sign his or her motion for extension); *In re Talib* 335 B.R. 417, 421 (Bankr.W.D.Mo. 2005) (observing that certification is not required to be signed under penalty of perjury), *reconsideration denied,* 335 B.R. 424; *In re Cleaver,* 333 B.R. at 434 (stating that at a minimum a certification is a written statement that the signer affirms or attests to be true; certification held marginally valid because attorney and debtor both signed it).

■ Make no mistake about Congress' intention: individual debtors must have credit counseling before they are eligible for relief under any chapter of the Bankruptcy Code. The narrow section 109(h)(3)(A) exception to the requirement for pre-bankruptcy credit counseling actually contains four separate elements to be satisfied, including a proper certification. In almost all of the reported cases on the issue of the exception under section 109(h)(3)(A), the debtors' cases have been dismissed because they failed to satisfy at least one element. *See In re Seaman,* 340 B.R. 698, 706 n. 3 (Bankr.E.D.N.Y., March 30, 2006) (noting that "of the thirty-four decisions addressing ineligibility under Section 109(h) to date, thirty-one have resulted in dismissal.").

■ This Court interprets "Certification" to mean that the facts contained in the statement must be sworn to under oath. In this case, the Court cannot find

that the document signed by the Debtors constitutes a certification, i.e., an affirmation under oath that the statements contained in the writing are true. The document in question has no heading and is only signed by each of the debtors and dated; it is not a certification. *See In re LaPorta,* 332 B.R. at 882. Yet an unambiguous requirement of the statute is that the request be made by certification, which means that the facts contained in the certification must be sworn to under oath. 11 U.S.C. § 109(h)(3)(A).

Having determined that the Debtors failed to file a proper certification for a temporary waiver, the Court finds that it is unnecessary to discuss whether the document would meet the other requirements of 11 U.S.C. § 109(h)(3)(A). However, the Court notes that the Eighth Circuit Bankruptcy Appellate Panel has taken a fairly cold-hearted position on the issue of whether a pending foreclosure is an exigent circumstance. *See Hedquist v. Fokkena (In re Hedquist),* 342 B.R. 295, 300 (B.A.P. 8th Cir.2006) (affirming bankruptcy court which found impending foreclosure not exigent circumstance); *In re Dixon,* 338 B.R. 383, 388 (B.A.P. 8th Cir.2006) (stating that bankruptcy court did not abuse its discretion in holding that an impending foreclosure was not an exigent circumstance because debtor had ample notice under state law).

Other cases espouse a broader view on whether an imminent foreclosure constitutes an exigency. *See In re Henderson,* 339 B.R. 34, 38–39 (Bankr.E.D.N.Y.2006) (stating standard for exigent circumstances is not one of excusable neglect that would require the court to delve into the reasons for the exigency; therefore, impending foreclosure would qualify). *Accord* In re *Calderon,* No. 06–10561, 2006 WL 871477, at *1 (Bankr.S.D.Fla., Feb.21, 2006)(dismissing case but stating that im-

minent foreclosure qualifies as exigent circumstance); *In re Childs,* 335 B.R. 623, 630 (Bankr.D.Md.2005)*(per curiam)* (finding that imminent foreclosure is an exigent circumstance). However, it is not necessary to reach this issue because the Debtors failed to meet the threshold requirement that the statement of exigent circumstances be made by a certification.

Therefore, for the reasons stated, this case is dismissed.

IT IS SO ORDERED.

### In re H & W MOTOR EXPRESS COMPANY

**Larry S. Eide, Chapter 7 Trustee, Plaintiff,**

v.

**Urban R. Haas and Patricia M. Haas, Individually and as Trustees of the Marie C. Haas Trusts, f/b/o Urban Andrew Haas, Christopher James Haas, Aimee Marie Haas, n/k/a Aimee Marie Haas Walsh and Catherine Anthoine Haas, Defendants and Third–Party Plaintiffs,**

v.

**Roger Waldner, Third– Party Defendant.**

Bankruptcy Nos. 02–2017D, 04–9106. No. 05–CV–1029–LRR.

United States District Court, N.D. Iowa, Eastern Division.

May 1, 2006.

Larry S Eide, Pappajohn, Shriver, Eide & Nicholas, PC, Mason City, IA, for Plaintiff.

William T. McCartan, Bradley & Riley, Cedar Rapids, IA, for Defendant.

David J. Dutton, James R. Hellman, Dutton Braun Staack Hellman Iversen, Waterloo, IA, for Third-party Defendant.

Office of the U.S. Trustee, Cedar Rapids, IA, for Trustee.

**ORDER ON MOTION TO WITHDRAW REFERENCE OF CASE OR PROCEEDING WITHIN CASE**

READE, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .211

II. PRIOR PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .211

III. THE MERITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .212
 A. Untimely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .213
 B. Cause Not Shown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .214

IV. CONCLUSION ...............................................217

## I. INTRODUCTION

Before the court is Third–Party Defendant Roger Waldner's Motion to Withdraw Reference of Case or Proceeding within Case ("Motion") (docket no. 6).

## II. PRIOR PROCEEDINGS

On July 11, 2004, Larry S. Eide filed a Complaint in the United States Bankruptcy Court for the Northern District of Iowa ("the Bankruptcy Court") against Urban Haas and Patricia Haas. Eide was a Chapter 7 Trustee in *In re H & W Motor Express Company*, Case No. 02–2017D, another case pending in the Bankruptcy Court.[1] By filing the Complaint, Eide initiated an adversary proceeding against the Haases and sought to recover property of the bankruptcy estate. *See* 11 U.S.C. § 542(a) (requiring individuals in possession of property of the bankrupt estate to deliver it to the trustee); *see also id.* § 323 (appointing trustee representative of the bankrupt estate, with the capacity to sue).

*Eide* proceeded in the Bankruptcy Court for nearly a year, and numerous filings and orders were docketed. On November 8, 2004, the Haases filed a Third–Party Claim against Waldner. On April 29, 2005, more than five months after he filed his Answer to the Haases's Third–Party Claim, Waldner filed the instant Motion in the Bankruptcy Court. Waldner represented to the Bankruptcy Court that:

> Cause exists for the withdrawal of this matter, to wit: this matter is a non-core proceeding, as to which the Bankruptcy Judge, under 28 U.S.C. § 157(c), may only hear and report, and in light of the likelihood that de novo review will be sought under 28 U.S.C. § 157(c)(1), it is in the interest of judicial economy for the District Court to hear the matter in the first instance. Withdrawal of the reference is particularly appropriate in this case since there is currently pending before the District Court a civil action involving the same parties and the same Memorandums of Understanding. *See* Case No. C04–1014[–]EMJ.

Roger D. Waldner is the Plaintiff in another case, *Waldner v. Carr, et al.,* No. C04–1014–EMJ. *Waldner* is currently pending in the district court. The Haases are two of more than a dozen defendants in *Waldner*.

On May 5, 2005, Chief Bankruptcy Judge Paul J. Kilburg stayed all action in *Eide* pending the district court's ruling on the Motion. On May 24, 2005, Sean F. McAvoy, Clerk of the Bankruptcy Court for the Northern District of Iowa, electronically transmitted a certified record of *Eide* to the Clerk of Court for the Northern District of Iowa. Included in the record was Waldner's Motion.[2] Neither Eide

---

1. All filings in *Eide* contain the parallel caption of *In re H & W Motor Express Company,* Case No. 02–2017D.

2. Neither the statute nor the local rules indicate whether a party should file a motion to withdraw the reference in bankruptcy court or district court. There is some authority that Waldner correctly filed his Motion in the Bankruptcy Court. *See* Fed. R. Bank. P. 5011, Advisory Committee Notes (contemplating that parties file motions to withdraw reference with the bankruptcy clerk, who would then forward the motions to the district court); *see also Resolution Trust Corp. v. Overland Park Fin. Corp.,* 182 B.R. 865, 869–70 (D.Kan.1995) (relying on local rule and holding that "the motion for withdrawal should not be filed directly in the district court"). Because Waldner did not file his Motion in this court and the Clerk of Court for the Northern District of Iowa mistakenly docketed the certified record of the case as a "Notice of Withdrawal Reference from Bankrupt-

nor the Haases resisted or joined in Waldner's Motion.

### III. THE MERITS

Federal district courts have original jurisdiction over bankruptcy cases. 28 U.S.C. § 1334. "District courts, however, need not adjudicate these cases; they may refer them to bankruptcy courts...." *United States v. Gurley*, 434 F.3d 1064, 1067 (8th Cir.2006) (citing 28 U.S.C. § 157(a)). Title 28, United States Code, Section 157(a) permits a district court to "provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). In the Northern District of Iowa, bankruptcy actions are routinely referred to bankruptcy judges pursuant to a standing administrative order. *See* N.D. Iowa Administrative Order No. 927 (May 5, 1986) (ordering the referral of all cases arising under title 11 to the Bankruptcy Court). On the basis of Section 157(a) and the standing administrative order, *Eide* was automatically referred by this court to the Bankruptcy Court.

Title 28, United States Code, Section 157(d) permits a district court to withdraw its prior reference of a case to a bankruptcy court. 28 U.S.C. § 157(d); *see Vreugdenhil v. Hoekstra*, 773 F.2d 213, 215 (8th Cir.1985) (noting that "the district court could have withdrawn this case from the bankruptcy court, despite the earlier general order of referral"). Section 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so

withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

■ Waldner's Motion invokes only the discretionary provision of Section 157(d). There are no claims in the case that would require the court to consider "other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Thus, the court shall only consider the discretionary

cy Court," significant delay in ruling on the Motion resulted.