**In re Lance Van ROBERTSON and Pamela Jean Robertson, Debtors.**

No. 06–32329.

United States Bankruptcy Court, D. Minnesota.

July 3, 2007.

Joseph L. Kelly, Kelly Law Office, Burnsville, MN, for Debtors.

ORDER DENYING MOTION OF UNITED STATES TRUSTEE FOR DISMISSAL PURSUANT TO 11 U.S.C. § 707(b)

GREGORY F. KISHEL, Chief Bankruptcy Judge.

This Chapter 7 case came on before the Court for hearing on the motion of the United States Trustee ("the UST") for dismissal under 11 U.S.C. § 707(b). The UST appeared by his attorney, Michael R. Fadlovich. The Debtors appeared by their attorney, Joseph L. Kelly. The following order memorializes the disposition of the motion, based on the pre- and post-hearing written submissions and the arguments of counsel.

## NATURE OF MOTION

This case was commenced by a voluntary petition filed on September 30, 2006. This was after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8 ("BAPCPA"); hence the provisions of BAPCPA apply to it.

Before the enactment of BAPCPA, 11 U.S.C. § 707(b) had been known as the "substantial abuse" provision of Chapter 7. Under the former text, the Chapter 7 case of an individual whose debts were primarily consumer debts could be dismissed on motion of the UST, if allowing the case to proceed to a general discharge of debt "would be a substantial abuse of the provisions of" Chapter 7. The pre–2005 version of the statute did not define the term "substantial abuse." Nor did it identify relevant factors to be considered in applying the term, or outline the analysis to be used.

But over the years after its first enactment in 1984, the Eighth Circuit (and other courts) construed former § 707(b) to focus on whether the debtor had the financial ability to support a confirmable plan under Chapter 13 that would pay a meaningful distribution to unsecured creditors. Under this line of authority, the showing of such an ability equated to the prospect of substantial abuse, which would merit dismissal of the Chapter 7 case. *E.g., In re*

*Taylor,* 212 F.3d 395 (8th Cir.2000); *In re Koch,* 109 F.3d 1285 (8th Cir.1997); *In re Huckfeldt,* 39 F.3d 829 (8th Cir.1994); *United States Trustee v. Harris,* 960 F.2d 74 (8th Cir.1992); *Fonder v. United States,* 974 F.2d 996 (8th Cir.1992); *In re Walton,* 866 F.2d 981 (8th Cir.1989); *In re Cox,* 315 B.R. 850 (8th Cir. BAP 2004); *In re Nelson,* 223 B.R. 349 (8th Cir. BAP 1998). Incorporating as it did the considerations of 11 U.S.C. § 1325(b), this line of authority left much to the process of factfinding by the bankruptcy judge—not to mention an individualized exercise of judgment, as to which of a debtor's proposed personal expenditures were "reasonably necessary to be expended" for the maintenance and support of the debtor and dependents, among other issues.

The 2005 legislation multiplied the length of the text of § 707(b) by 13 to 14 times, if an eyeballed estimate from the published pages would serve. Congress re-identified the putative wrong against which § 707(b) lies, by deleting the qualifying adjective from the identifier; now the court may dismiss "if it finds that the grant of relief [under Chapter 7] would be *an abuse* of the provisions of [that] chapter." (The emphasis is added.) One is not sure what the point is, of that; but then the amendment directs the bulk of the burgeoned text to process by which the court is to get to the point of dismissal, i.e., the finding of a prospect of "an abuse," by specifying a detail-heavy analysis.

A number of trial-level courts have already published decisions applying the new statute. Several of them have identified the underlying congressional purpose as the reduction of judicial latitude and discretion in the process of fact-finding and legal adjudication under § 707(b). *In re Hartwick,* 352 B.R. 867, 870 (Bankr. D.Minn.2006); *In re Haman,* 366 B.R. 307, 317 (Bankr.D.Del.2007); *In re Longo,* 364 B.R. 161, 164 (Bankr.D.Conn.2007); *In re Randle,* 358 B.R. 360, 363 (Bankr.N.D.Ill. 2006); *In re Barr,* 341 B.R. 181, 185 (Bankr.M.D.N.C.2006). The more free-ranging exercise of judgment as to a debtor's ability to repay debt seems to have been significantly constrained. Now, if the movant relies on the test added by the amendments, the court is to go through a much more formulaic process of identifying the debtor's "current monthly income"—now a defined term under new 11 U.S.C. § 101(10)(A), limned by source and calculated as an average over a specified time—and then deducting certain specifically identified, deemed charges from it. The goal is to identify an amount which, if positive, is deemed to be available for debt repayment on a monthly basis. If that amount, as it would accumulate over 60 months, either meets a floor specified by dollar amount or would be sufficient to service a specified fraction of the debtor's general unsecured debt, "the court shall presume abuse exists." (Presumably, then, a prima facie case for dismissal has been made; however, it is not specified whether this presumption is rebuttable or irrebuttable, and the statute does not indicate what proof would be necessary to rebut it.)

Strictly speaking, this is not a matter of "eligibility" for Chapter 7; Congress did not push this complicated verbiage into 11 U.S.C. § 109, which is entitled "Who may be a debtor." Rather, it is a matter of singling out, on a case-by-case basis, those petitioners already in Chapter 7 who are then to be deemed not entitled to finish up their cases to receive the complex of relief available to individual debtors in bankruptcy liquidation. It amounts to a culling from the court's Chapter 7 docket, done after the fact of filing a petition, on individual motion by the UST.

At least for the majority of cases, the motion will be brought in challenge of the debtor's preliminary showing of entitlement to Chapter 7 relief.[1] This newly-required debtor's showing is now to be made at the inception of the case on the so-called "means test document," Form B22A.[2]

## THE ISSUE AT BAR, AS IT ARISES FROM THE PROCEDURAL HISTORY OF THIS MOTION

This case presents a threshold issue under the new regime of dismissal-for-abuse in Chapter 7 cases. That issue does not entail the substantive merits under § 707(b) on which the UST based his original request for dismissal. Instead, it emerges from the procedural antecedents of the motion.

The original means test form filed by the Debtors did not show a surplus of household income at all, let alone one in an amount that exceeded the statutory maxima so as to trigger the presumption of abuse under § 707(b)(2)(A)(i). Pursuant to Fed. R. Bankr.P.2002(a)(1), the clerk's notice issued on the filing of the Debtors' petition set the date of the meeting of creditors for November 9, 2006. On November 20, 2006, the office of the UST caused to have the following entry placed on the docket for this case:

> The United States Trustee has determined that the debtor has not filed nor

transmitted all of the required means testing documents and that without these documents, the United States Trustee cannot make a determination as to whether debtor's case is presumed abusive under section 707(b).[3]

On December 14, 2006, the UST filed the motion at bar, giving notice of a hearing on January 16, 2007. In that motion, the UST's attorney acknowledged the facial content of the Debtors' Form B22A. However, he stated that the UST had "identified errors with respect to the Debtors' CMI and expense deductions on their Form B22A." Going on, the UST had "recalculated the information on Form B22A" after considering the additional information and making certain assumptions. On that basis the UST had concluded that "the Debtors do in fact have monthly disposable income totaling $1,030.11," which if "multiplied by 60 exceeds $10,000.00." Thus, as the UST would have it, "the presumption of abuse arises in this case," prompting this motion. He urged that the presumption standing alone is a basis for dismissal.

The Debtors' counsel filed his clients' response on January 10, 2007. In it, the Debtors defended the motion on its merits, as to the specifics of the means-to-pay factors. But they also raised a threshold, procedural issue, that the motion was barred because the UST had never filed a

---

1. Perhaps this is better termed a showing of lack of non-entitlement. The phrasing is clumsier, but it seems to carry the thought better.

2. Form B22A is among the Interim Forms currently required in this District. Its full title is "Statement of Current Monthly Income and Means Test Calculation."

3. Under current practice of the clerk, there is no separate filed document associated with this entry. Through the CM/ECF electronic

filing program, the office of the UST submits a request to have standardized text with this wording inserted into the electronic-format case docket. The creation of that entry has the same legal effect as to its wording-content as the filing of an electronically-submitted separate document would be given. This practice was adopted to conveniently memorialize a standardized case event, communication, and docket entry, at a time when it seemed that these "statements" would be forthcoming in large multiples.

"statement as to whether the debtors' case would be presumed to be an abuse under [11 U.S.C. § ]707(b)," as required under 11 U.S.C. § 704(b)(1)(A). The Debtors' counsel argued that 11 U.S.C. § 704(b)(2) makes the filing of a statement to that effect a prerequisite for the filing of a motion for dismissal that relies on the presumption of § 707(b)(2)(A). Thus, he maintained, the lack of a filed statement by the UST speaking directly to the existence of the presumption made the motion at bar fatally deficient as to a statutorily-required prerequisite.

Interestingly enough, on January 16, 2007—on the day counsel argued this motion, but after the hearing ended—the UST filed a document entitled "Statement of Presumed Abuse." The text of this document reads as follows:

> The United States Trustee previously filed a statement under section 704(b)(1)(A) of the Bankruptcy Code indicating an inability to determine whether this case would be presumed to be an abuse. The United States Trustee has reviewed all materials filed and submitted by the Debtor, including certain additional documents received after the filing of the United States Trustee's initial statement under section 704(b)(1)(A). Based on this review, the United States Trustee has determined that the Debtor's case is presumed to be an abuse under 11 U.S.C. section 707(b)(2).

## DISCUSSION

This threshold issue appears to be a matter of first impression, insofar as published case law is concerned. There is only one extant decision that applies the mandates of new § 704(b)(1) to the treatment of a motion for dismissal under new § 707(b)(2), *In re Close*, 353 B.R. 915 (Bankr.D.Kan.2006), and that is not on point.[4]

As in *Close*, the outcome on the issue at bar is a matter of the "plain meaning" rule of statutory construction, an approach much favored by the Supreme Court in its bankruptcy jurisprudence over the last two decades.[5]

---

4. *Close* addressed the issue of when the ten-day period commences for the filing of the UST's statement under § 704(b)(1)(A), as between a first date set for a meeting of creditors (on which the meeting in *Close* was actually convened), and the later date on which a continued meeting of creditors was deemed to have been concluded (without the actual attendance of any party). The focus in this case, however, is on the other end of the ten days, as well as the content of the statement filed at the end of the period.

5. *E.g., Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000); *Rake v. Wade*, 508 U.S. 464, 472–473, 113 S.Ct. 2187, 2192–2193, 124 L.Ed.2d 424 (1993); *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 387, 113 S.Ct. 1489, 1494, 123 L.Ed.2d 74 (1993); *Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2243, 2246–2247, 119 L.Ed.2d 519 (1992); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642, 112 S.Ct. 1644, 1647–1648, 118 L.Ed.2d 280 (1992); *Barnhill v. Johnson*, 503 U.S. 393, 395–400, 112 S.Ct. 1386, 1388–1391, 118 L.Ed.2d 39 (1992); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 32–37, 112 S.Ct. 1011, 1014–1016, 117 L.Ed.2d 181 (1992); *Union Bank v. Wolas*, 502 U.S. 151, 160–162, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991); *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 38, 112 S.Ct. 459, 463, 116 L.Ed.2d 358 (1991); *Toibb v. Radloff*, 501 U.S. 157, 160–161, 111 S.Ct. 2197, 2199–2200, 115 L.Ed.2d 145 (1991); *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 101–102, 109 S.Ct. 2818, 2822–2823, 106 L.Ed.2d 76 (1989) (plurality opinion); *United States v. Ron Pair Ents., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). *Contra, BFP v. Resolution Trust Corp.*, 512 U.S. 1247, 114 S.Ct. 2771, 129 L.Ed.2d 884 (1994); *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

Section 704(b)(1)(A) prescribes the groundwork and specifies the staging for a UST's motion for dismissal, in which the presumption of abuse may be invoked to make out a prima facie case. Its operative verbs are words of mandate—"*shall*"—which establishes its procedural prescriptions as essential prerequisites for any subsequent motion. The UST is to "review all materials filed by the debtor." In context—i.e., the densely-worded framework added by BAPCPA—it is amply clear that "filed" means filed *with the court.*[6] There is no reference to materials to be obtained from the debtor or third-party sources via formal discovery, informal exchange, or independent investiga-tion. There is certainly no newly-created right in the UST to compel the production of documents or any other information from a debtor on an expedited basis, or to obtain them in any way other than those under generally-applicable law.[7] So, in do-ing the statutorily-mandated early evalua-tion of a case for the prospect of a pre-sumption of abuse, the UST ultimately is relegated to relying on what the debtor "filed" in the case. The statute seems to contemplate that this will present suffi-ciently-reliable information on which to make an evaluation—at least when debtors and their counsel have complied with the newly-heightened duties of verification as to accuracy that BAPCPA has imposed.[8]

---

**6.** For instance, a debtor is to "file" all of the basic documents to commence a bankruptcy case, 11 U.S.C. § 521(a)(1), "unless the court orders otherwise," § 521(a)(1)(B), and the case "shall be automatically dismissed effec-tive on the 46th day after the date of filing of the petition" if the debtor has not "filed" all of those documents during the preceding 45 days, § 521(i)(1). Strictly speaking, § 521(a)(1) does not specify that the recipi-ent of the act of "filing" is the court. But there is no way to comprehend an "automat-ic" dismissal of the case other than by act of a court that had been monitoring its own records, received and maintained under stat-utory mandate. Beyond that, the debtor is to "file with the clerk" of the court a statement of intention as to the future disposition of se-cured debt and associated collateral, § 521(a)(2)(A); to "file with the court" a cer-tificate attesting to the debtor having re-ceived certain credit counseling pre-petition, § 521(b)(1), plus "the debt repayment plan, if any," produced through that counseling, § 521(b)(2); and to "file with the court" the record of any interest of the debtor in an education individual retirement account, § 521(c). In turn, "[a]t the request of" the court or other named parties, the debtor is to "file with the court" copies of all Federal income tax returns filed by the debtor during the pendency of the bankruptcy case and other documents related to tax returns, §§ 521(f)(1)-(3), as well as annual verified statements of the income and expenditures of the debtor during the pendency of a Chapter 13 case, § 521(f)(4). By contrast, when the recipient of a debtor's transmission of docu-ments is someone or something other than the court, BAPCPA's operative verb is "pro-vide": *see* § 521(e)(2)(A)(i) (debtor is to "provide" trustee with copy of most recent Federal income tax return); § 521(e)(2)(A)(ii) (ditto, as to any creditor requesting same); § 521(h) (debtor to "provide" document(s) to establish debtor's identity, to UST or trustee). And, in turn, if a creditor in a Chapter 13 case "files with the court" a request for a copy of the debtor's plan, the court is to "make available" such, § 521(e)(3). Much of the language of BAPCPA is puzzling on an initial review; but in context the sharp delin-eation between these two verbs is obvious, and as between the two the denotations are distinct.

**7.** The generally-applicable means would in-clude the resort to an examination of a debtor under Fed. R. Bankr.P.2004 or 2005, or the derivative measure of UST access to all docu-ments and information that the assigned pan-el trustee could compel from a debtor under 11 U.S.C. §§ 521(a)(3)-(4). Since there would be no "contested matter" pending via formal proceeding in the case, formal discovery would not yet be available under Fed. R. Bankr.P. 9014(c).

**8.** The new text seems to be designed to put some teeth into this assumption. Under new § 707(b)(4)(C), attorneys are subject to a

After that, the statute is equally clear: the UST *"shall ...* file with the court a statement *as to whether* the debtor's case would be presumed to be an abuse under [§ ]707(b) ..." (emphasis added). The word "whether" is dictionary-denoted as "a function word ... to indicate ... (2) an indirect question involving *alternatives* ...; (3) *alternative* conditions or possibilities ..." Philip Babcock Gove, ed., Webster's Third New International Dictionary of the English Language (unabridged ed.1993), at 2603 (emphasis added). As such, this requires an election between two specific representations, to be made right in the text of the UST's statement. Both of those representations are to go in an *unequivocal* fashion to the UST's estimation of the legal posture of the case in light of § 707(b)(2). There either *is* or *is not* a presumption of abuse, based on a detail-busy analysis of the debtor's monthly income, reduced by the expenses and secured debt payments and so forth, both general in nature and fussily pinpoint-specific, that are laid out in §§ 707(b)(2)(A)-(B). But the UST must state which one is the case, in his estimation.

Under the common, every-day meaning of the statutory verbiage there is no room for an equivocal placeholder, the planting of a stake that is somehow to reserve the right to draw a conclusion for later exercise, to toll the period under § 704(b)(2) for the filing of a motion under § 707(b)(2), or both. And yet that is all the UST did here.

Going further into the statute, and by equal words of mandate, in a case where the debtor's household income is at or

---

statutory "automatic certification of meritoriousness" as to any "petition, pleading, or written motion" signed by them. This certification is analogous to that long imposed by Fed. R. Bankr.P. 9011(b), though the statute uses part of the language from an earlier version of that rule. Another automatic certification is imposed by new § 707(b)(4)(D). It is triggered by counsel's signature on the client's bankruptcy petition, which activates a deemed representation that "the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect." Though this new verbiage has no directly-associated enforcement mechanism, § 707(b) now contains a basis in statute for the bankruptcy court to impose sanctions. These can take the form of "all reasonable costs" incurred by a successful movant under § 707(b), where "the action of the attorney for the debtor in filing a case under [the Bankruptcy Code] violated rule 9011 of the Federal Rules of Bankruptcy Procedure." 11 U.S.C. § 707(b)(4)(A)(i)-(ii). It also provides for "the assessment of an appropriate civil penalty against the attorney for the debtor," § 707(b)(4)(B)(i), payable to the trustee or the UST, § 707(b)(4)(B)(ii), if "the attorney for the debtor violated rule 9011 of the Federal Rules of Bankruptcy Procedure," 11 U.S.C. § 707(b)(4) (prefatory language). These provisions are worded in a cumbersome fashion and they are clumsily organized. With them being references to readily-amendable rules of court procedure that were not legislatively adopted, their mere placement in a statute is somewhat counterintuitive. It is not clear exactly how they are to be applied, and they may not be as baleful as they first may seem. *See* David Gray Carlson, *Means Testing: The Failed Bankruptcy Revolution of 2005,* 15 AM. BANKR.INSTIT. L.REV. 223, 294–295 (2007); Henry J. Sommer, *Making Sense Out of Nonsense: Representing Consumers Under the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,"* 79 AM. BANKR.L.J. 191, 204–206 (2005). But, their general drift is clear: debtors' counsel are to exercise significant care as to the completeness and accuracy of *all* recitations on their clients' schedules, after they have made a factual investigation and legal evaluation that conforms to the standards applicable to any attorney filing a pleading, motion, or other document in a federal court. The content of a debtor's petition and schedules is relied on, and should have the quality to merit that reliance. (Critic Sommer, 79 AM. BANKR.L.J. at 206, questioned whether the new verbiage worked any change from preexisting law. He had a point, though an academic one only.)

above "the median family income of the applicable state" for a household of the size deemed to the debtor's, § 704(b)(2) requires any motion for dismissal based on the presumption to be filed within "30 days after the date of filing a statement under [§ 704(b) ](1)." [9] It is undeniable that a motion that invokes the presumption can be made only if the UST has already, timely, put of record his unequivocal conclusion that the presumption lies in the case. That did not happen here.[10]

That is why the UST's motion must be denied, for want of a statutorily-prescribed prerequisite.

The language of §§ 704(b)(1)-(2) tracks with a more general intent behind BAPCPA, to reduce delay in the fixing of rights and statuses during the course of bankruptcy cases, and in particular to expedite the basic determination of whether a party should be in bankruptcy at all. *E.g.,* H.R.REP. No. 109–31, pt. 1, 109TH CONG., 1st Sess. (2005) at 19 (BAPCPA's expansion of expedited "small business Chapter 11" provisions "institut[e] a variety of time frames and enforcement mechanisms designed to weed out small business debtors who are not likely to reorganize") and 47 (general "Performance Goals and Objectives" of BAPCPA include "streamlining

case administration" in bankruptcy cases). This is one instance, however, where the onus of acting quickly, clearly, and decisively falls on a party other than the debtor. BAPCPA contained a number of ostensibly strict-compliance, zero-tolerance measures that weigh heavily on debtors in bankruptcy. *E.g., In re Rendler,* 368 B.R. 1 (Bankr.D.Minn.2007), *In re Hedquist,* 342 B.R. 295 (8th Cir. BAP 2006), *In re Dixon,* 338 B.R. 383 (8th Cir. BAP 2006), *In re Wallert,* 332 B.R. 884 (Bankr. D.Minn.2005), and *In re LaPorta,* 332 B.R. 879 (Bankr.D.Minn.2005) (all enforcing requirement of completion of pre-petition credit counseling as prerequisite for individual debtor's eligibility for bankruptcy relief); *In re Heather Apts. L.P.,* 366 B.R. 45 (Bankr.D.Minn.2007) (debtor in "single asset real estate" Chapter 11 case is strictly obligated to commence making payments of interest to mortgagee no later than 90 days after commencement of case, or automatic stay against foreclosure terminates by operation of law; BAPCPA had no provision for extension of deadline to commence payments). This one happens to impact on a constituency that stands in opposition to a debtor. Fairness certainly does not frown on enforcing it just as strictly as the others are to be. That puts an end to the motion at bar.[11]

---

9.  Neither side has made an issue as to whether the Debtors' current monthly income equals or exceeds the median family income in Minnesota for a household of their size. It is undisputed that they have two dependents. In his analysis for this motion the UST has calculated the Debtors' current monthly income at $7,421.39, a figure that the Debtors did not controvert in their defense of the motion. The median annualized family income for a four-person household in Minnesota is $75,990.00. *See* U.S. Census Bureau, State Median Family Income, available at *www.usdoj.gov/ust/eo/bapcpa/20070201/ meanstesting.htm* (viewed July 3, 2007 for present purposes); and, in general, *www. census.gov/hhes/www/income/income.html.* The Debtors' current income, as calculated by

the UST, is $89,056.68, annualized. Thus, the deadline of § 707(b)(2) applies to this case, as do the statutory prerequisites for a motion brought under that statute.

10.  The one that the UST did file was, to use a colloquialism, way late.

11.  The way the UST framed his motion in his original written submission, it sounded only under § 707(b)(2), and it was based only on the presumption of abuse created by that subsection. The title of the motion specified as such; and all of the analysis spun out at length in the motion's text was premised on § 707(b)(2) alone. There was no mention of the alternate statutory basis for dismissal, 11

## ORDER

IT IS THEREFORE ORDERED that the United States Trustee's motion for dismissal of this case is denied, in its entirety.

U.S.C. § 707(b)(3), until paragraph 33 of the motion's text:

> In the event the court does not find the Debtor's case to be a presumptive abuse under 11 U.S.C. § 707(b)(2), then the U.S. Trustee submits that the case is an abuse using the Totality of Circumstances test as set forth in 11 U.S.C. § 707(b)(3) and the U.S. Trustee hereby reserves his right to bring a motion under that subsection.

This is not an invocation of § 707(b)(3) via the proceeding that was then being initiated via the filing of that written motion. It was just a statement of an intention "to bring a motion under that subsection," i.e., *a distinct and separately-commenced proceeding*, if the UST lost the one at bar. The UST tried to slip a longish argument under § 707(b)(3) into his post-hearing briefing. However, the briefing was requested solely to expand the parties' arguments for the two issues raised by the motion and the Debtors' response—the § 704–based issue on the so-called "Ten Day Statement," and the expense-oriented issue under the presumption that had been treated in a previous ruling from this district, *In re Hartwick, supra.* The Debtors' counsel did not address § 707(b)(3) in the post-hearing briefing, which was to be simultaneously filed. His submission comported with the directive for post-hearing briefing; the UST's did not. In no way could this distinct theory of litigation be considered to have been presented for decision by consent despite its absence from the original, formal motion. As framed and carried forward, then, this motion does not implicate § 707(b)(3) on its merits, and the motion can be disposed of in its entirety on the ruling just made.