**In re Geoff Paul DRAISEY and Kristin Denise Draisey, Debtors.**

**No. BKY 07–31204.**

United States Bankruptcy Court, D. Minnesota.

April 8, 2008.

William L. Bodensteiner, Bodensteiner Law Firm, Austin, MN, for Debtors.

ORDER DENYING MOTION OF UNITED STATES TRUSTEE FOR DISMISSAL PURSUANT TO 11 U.S.C. § 707(b)

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came on before the Court for hearing on the motion of the United States Trustee ("the UST") for dismissal under 11 U.S.C. §§ 707(b)(1) and (3). The United States Trustee appeared by his attorney, Michael R. Fadlovich. The Debtors appeared by their attorney, William L. Bodensteiner. The parties framed up a threshold issue, going to the procedural prerequisites (if any) for the UST's motion, which they submitted to the

Court. That issue is dispositive; the record requires the denial of the UST's motion.

## PROCEDURAL HISTORY
## OF MOTION

This bankruptcy case was commenced by the filing of a voluntary petition under Chapter 7 on April 10, 2007.[1]

On July 9, 2007, the UST filed the motion at bar. Through it, the UST seeks dismissal of this case pursuant to 11 U.S.C. § 707(b)(1), on the ground that the granting of relief under Chapter 7 to the Debtors would be an abuse of that chapter's provisions. The UST frames his motion under 11 U.S.C. § 707(b)(3)(B). That statute provides for dismissal where "the totality of the circumstances ... of the debtor's financial situation demonstrates abuse." He maintains that the Debtors' personal financial means, on and after the date of their bankruptcy filing, would allow them to propose a confirmable plan under Chapter 13, to obtain confirmation of it, and to sustain it through completion and a grant of discharge, via the application of their disposable income. The UST argues that this makes their effort to obtain an unqualified general discharge under Chapter 7 an abuse of that remedy. To support this, he cites congressional floor remarks regarding a "bankruptcy reform" bill introduced over four years before the enactment of BAPCPA.[2]

The UST does *not* rely on 11 U.S.C. § 707(b)(2). That statute creates a presumption of abuse if a debtor's "current monthly income" (as defined under 11 U.S.C. § 101(10A)), reduced by certain actual and deemed household expenses, results in a surplus that would enable the repayment of pre-bankruptcy debt in a specified measure over a 60–month period. The UST declined to invoke this presumption because § 101(10A) uses a debtor's actual income, as derived over the period of roughly six months *preceding* the bankruptcy filing, as the base for the determination of "current monthly income." Debtor Kristin Draisey was unemployed for most of the period relevant to § 101(10A); thus, the backward-oriented calculus of the "means test" of § 707(b)(2)(A) does not factor out to a surplus that would trigger the presumption in this case.

Having conceded this point early in the case, the UST did not "file with the Court a statement" reflecting a conclusion on his part that the Debtors' case "would be presumed to be an abuse under section 707(b)," *see* 11 U.S.C. § 704(b)(1)(A). He has never filed a "statement as to *whether* the [Debtors'] case would be presumed to be an abuse under section 707(b)," i.e., memorializing a conclusion in either direction as to the existence of the presumption.[3]

However, shortly before the Debtors' bankruptcy filing, Kristin Draisey obtained and started a new, relatively well-compensated job, and started receiving a paycheck from it. The UST's calculations would deem an income surplus to the Debtors, derived from that augmentation of the household fisc. The UST argues that the

---

1. The provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8 ("BAPCPA"), applied to it.

2. The UST's citation is to Cong. Rec. S11700 (December 7, 2000).

3. Again, the language is quoted from § 704(b)(1)(A), though the emphasis is added. This statute states that "the United States trustee ... shall ..., not later than 10 days after the date of the first meeting of creditors," file the statement described by the other language quoted above.

surplus is large enough "to pay creditors in a hypothetical Chapter 13 plan." Thus, this motion was initiated under the "totality of the circumstances" theory for proof of abuse.

## THRESHOLD ISSUE PRESENTED

In defending against the UST, the Debtors' counsel raises a threshold issue. It goes to the procedural antecedents of this motion.

■ As noted earlier, the UST did not file a statement addressing the existence of the presumption of § 707(b)(2)(A)(i) at all, let alone within the ten-day window prescribed by § 704(b)(1)(A).[4]

The Debtors' counsel argues that the filing of this document was a prerequisite for the making of a motion under any provision of § 707(b). As he would have it, the UST's failure to file a statement means that the UST may not proceed with this motion. Though counsel did not cite it in his brief, he appears to take a page from this Court's decision in *In re Robertson*, 370 B.R. 804 (Bankr.D.Minn.2007).[5]

The UST's response is that, because he never intended to rely on the presumption of § 707(b)(2), he was not bound to file a statement acknowledging the absence of the presumption. As he would have it, the filing of a statement on the presumption is not a prerequisite to bringing a motion under § 707(b)(3)—a different and alternate basis for dismissal. His counsel insists that "that's the way the statute must be interpreted and applied, in its totality." He also points to the provisions of the interim rule currently governing procedure under post-BAPCPA cases, arguing that the UST's motion was timely-filed by the deadline set therein:

> (e) DISMISSAL OF AN INDIVIDUAL DEBTOR'S CHAPTER 7 CASE OR CONVERSION TO A CASE UNDER CHAPTER 11 or 13 FOR ABUSE. The court may dismiss or, with the debtor's consent, convert an individual debtor's case for abuse under § 707(b) only on motion and after a hearing on notice to the debtor, the trustee, the United States trustee, and any other entities as the court directs.
>
> (1) Except as otherwise provided in § 704(b)(2), a motion to dismiss a case for abuse under § 707(b) or (c) may be filed only within 60 days after the first date set for the meeting of creditors under § 341(a), unless, on request filed before the time has expired, the court for cause extends the time for filing the motion to dismiss.

---

4. The Notice of Chapter 7 Bankruptcy Case issued by the clerk of this Court set May 11, 2007 as the date of the meeting of creditors in this case. The meeting of creditors was convened on that date. Between the effective date of the Bankruptcy Code of 1978 and the effective date of BAPCPA, the federal statutes governing bankruptcy lacked any reference to a *"first* meeting of creditors." The notion of a case necessarily having more than one meeting of creditors was a feature of the Bankruptcy Act of 1898, apparently abandoned by Congress in the mid–1970s when it structured the legal and procedural regime under the Code. *In re Vance*, 120 B.R. 181, 184–185 (Bankr.N.D.Okla.1990); *In re Busman*, 5 B.R. 332, 340 (Bankr.E.D.N.Y.1980). BAPCPA's legislative history is sketchy at

best; and it has no indication why Congress used the modifier-adjective *"first"* in this instance. Given the progression of events in this case, it is not necessary to winkle out the meaning of the phrase, i.e., whether it is to be equated with the date on which the meeting of creditors was first convened, or the first date set for it.

5. In *Robertson*, the UST was barred from proceeding on a motion sounding under § 707(b)(2) by his failure to timely file a statement attesting to "whether the . . . case would be presumed to be an abuse," i.e., a statement of a specific position that the case was (or was not) such an abuse. 370 B.R. at 810.

The party filing the motion shall set forth in the motion all matters to be considered at the hearing. A motion to dismiss under § 707(b)(1) and (3) shall state with particularity the circumstances alleged to constitute abuse.

Interim R. Bankr.P. (D.Minn.) 1017(e)(1) (promulgated in this District on September 27, 2005, to be effective on October 17, 2005). He cited one court that had declined to reach the result urged by the Debtors' counsel, holding that a motion framed under § 707(b)(3) was timely-filed under like circumstances: *In re dePellegrini*, 365 B.R. 830 (Bankr.S.D.Ohio 2007). *See also In re Byrne*, 376 B.R. 700, 704 (Bankr. W.D.Ark.2007); *In re Perrotta*, 378 B.R. 434, 438 (Bankr.D.N.H.2007); *In re Ansar*, 383 B.R. 344, 347–49 (Bankr.D.Minn.2008) (O'Brien, J.).

 If logical consistency in the progression of bankruptcy case administration were the only value to be applied to this dispute, in the abstract and on a slate clean for a judicially-created rule of decision, the UST's analysis would make some sense. But there is a statutory text to be applied here, plain on its face. As to that, the Court's sole function is enforcement according to its terms, as long as that does not lead to an absurd result. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). And, "[t]he fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." *Union Bank v. Wolas*, 502 U.S. 151, 158, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991).

The language of § 704(b)(2) mandates the UST to "file a motion to dismiss or convert *under section 707(b)*," "not later than 30 days after the date of filing" the statement that is contemplated by § 704(b)(1)(A). (Emphasis added). Under the statute's words of identification, the sort of motion that must be filed by the specified deadline is not limited to one made in reliance on the presumption of abuse under § 707(b)(2). The reference signifies *any and all* motions in which dismissal is sought on the ground of the debtor's "abuse of the provisions of" Chapter 7, i.e., any motion brought under § 707(b) generally. That is what the statute says, and that is the way that the deadline and the statutory prerequisites must be enforced in the case of any particular motion. None of the four courts that have addressed this issue took cognizance of the scope of the statute's tag; but that language alone governs the reach of the prerequisite to a motion for dismissal under the abuse provision.

The UST's reliance on an interim rule, locally-adopted, is misplaced.[6] At first glance, Interim Rule 1017(e)(1) provides a

---

6. In briefing, the UST's counsel refers to the cited text as coming from a *Federal* Rule of Bankruptcy Procedure. However, the text of the currently-effective, nationally-applied federal rules has not yet been amended to address the changes to the Code wrought by BAPCPA. In mid–2005, the Advisory Committee on Bankruptcy Rules and the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States issued approved text for interim rules to effectuate BAPCPA. These proposed rules were proffered to the bankruptcy courts across the country for local adoption. Any such adoption was to apply until the multi-year process for nationally-effective federal rules amendments could address BAPCPA. On September 27, 2005, the judges of this Court adopted the suggested interim rules for local application.

cutout from its more extended deadline, for motions based on the § 707(b)(2) presumption. The underlying thought is to shunt presumption-based motions over to the governance of a statute, § 704(b)(2), as to a deadline for filing. The corollary would be that a motion based upon § 707(b)(3) is subject to the later filing deadline stated in the interim rule ("60 days after the first date set for the meeting of creditors").[7]

But it does not follow that the UST's motion is saved by the presence of this rule on the books. In the first place, the rule itself does not speak to the issue here, the statutorily-mandated prerequisite of the filing of a statement on the existence of the presumption. It only speaks to the outside date, by which the request for dismissal must formally be put in motion. And even if it could be contorted into such an application, that would be inconsistent with the clear text of the statute, which applies the prerequisite to all motions brought under § 707(b). As such, the interim rule could not be enforced as the UST urges. All local rules "shall be consistent with Acts of Congress" and the federal procedural rules that govern the same subject matter. 28 U.S.C. § 2071(a). See also Fed. R. Bankr.P. 9029(a) (empowering each district court to make and amend local rules of bankruptcy procedure "which are consistent with—but not duplicative of—Acts of Congress . . ."); In re Suggs, 377 B.R. 198 (8th Cir. BAP 2007); In re McGowan, 226 B.R. 13 (8th Cir. BAP 1998); In re Falk, 96 B.R. 901 (Bankr. D.Minn.1989) (en banc) (all three cited decisions invalidating a local rule of bank-

ruptcy procedure as inconsistent with substantive provisions of Bankruptcy Code).

Of course, and as noted earlier, the Supreme Court has recognized an override to the "plain language" approach, where literalistic enforcement would lead to an absurd result. At least in every case in which a motion might later be brought under § 707(b)(3), the rationale just adopted would seem to require the UST to file a report on the existence or non-existence of the presumption; for no other reason, to shelter any such motion from the technical, procedurally-based defense raised here. The UST argues that this makes no sense in cases where he would not proceed in reliance on the presumption, and where he knows and admits that early. The point, apparently, is that doing this in all cases of suspected but non-presumptive abuse would be a substantial burden on the UST and the Court alike, toward no productive end.[8]

This argument, of course, goes back to the Court's earlier construction of the modifying phrase "as to whether the debtor's case would be presumed an abuse." Under that construction, the filing of a statement is appropriate whether the UST posits the presumption as a basis for a later-brought request for dismissal or not. In re Robertson, 370 B.R. at 810.

It is quite debatable whether this construction would be much of an imposition on the UST. From cursory review, at least, the post-BAPCPA incidence of motions under § 707(b) in this District has not been materially greater than before. And, the numbers are not that high in the absolute. The burden of filing a statement, however nugatory that statement may be, does not

---

7. The language setting this deadline was carried into the Interim Rules from the text of the corresponding Federal Rule of Bankruptcy Procedure that had been framed under pre-BAPCPA statutory law.

8. The statute imposes a duty on "the court [to] provide a copy of the [UST's] statement to all creditors, within five days of its filing." 11 U.S.C. § 704(b)(1)(B).

bode to be large. It would be a technical and prophylactic measure to preserve the alternate statutory basis for a motion in cases that may merit it. Any derivative obligation of the Court, to generally notice the UST's filed statement to all creditors, is not really a concern of the UST program.[9]

Beyond that, on the plane of logical function or purpose, the mandatory filing of a "stand-down" statement of position on § 707(b)(2) is not so absurd in context, even if it is a hedge. As before, now: debtors and their counsel should not rest easy about the prospect of dismissal for abuse on motion by the UST, until the deadline for filing of a motion under all provisions of § 707(b) is past. In those cases where the UST contemplates a motion on totality-of-the-circumstances considerations, the filing of the presumption-related statement would serve both as notice that § 707(b)(2) is laid to rest, and a conditional warning that § 707(b)(3) might yet be put into play. If debtors and their counsel were to be falsely lulled by the receipt of the statement, only to later receive a motion styled under § 707(b)(3), the disappointment would be their problem.[10]

Lastly, it cannot be an absurd result that the UST is pinned into the 30–day deadline of § 704(b)(2) for all motions brought under § 707(b). Admittedly, this is less time than that afforded to the UST under Fed. R. Bankr.P. 1017(e)(1), in effectuation of pre-BAPCPA law. But it was as fully within Congress's prerogative to set a newer and tighter deadline now, by statute, as it was within its power to have left the setting of a deadline to the rule-making process, as it did pre-BAPCPA. *Cf. In re Robertson*, 370 B.R. at 811 (though "BAPCPA contained a number of ostensibly strict-compliance, zero-tolerance measures that weigh heavily on debtors in bankruptcy," that is no reason not to enforce clear facial text of provisions that impose added burdens on other constituencies to bankruptcy cases).

This analysis puts an end to the matter at bar. In this case, the UST did not satisfy the prerequisite for the bringing of a request for dismissal under § 707(b)(3).[11]

IT IS THEREFORE ORDERED that the UST's motion for dismissal of this case is denied.

9. In colloquy with the Court, the UST's counsel raised the specter of a "gigantic" burden, were the construction of § 704(b) extended in application to require that the statement be filed and generally-noticed in every single case. That issue is not before the Court. The matter at bar is simple: whether the UST's motion against these Debtors may proceed or not, in this case.

10. As the UST's style of enforcement under BAPCPA has evolved, there is almost no chance of any such lulling, anyway. In cases where a motion is actually filed, the record has uniformly reflected a very intense sequence of pre-motion inquiries to debtors and their counsel, demands for documents, and analysis by the UST. All of this puts debtors on notice of the prospect of a motion for dismissal, and can even reveal the putative factual grounds that would be asserted.

11. This case addresses an issue implicated in *Robertson*, but left unresolved due to the imprecision of the framing of the motion there. *See* 370 B.R. at 811 n. 11.