**In re Peter and Andrea REED, Debtor.**

**Peter and Andrea Reed, Appellant,**

v.

**Peter C. Anderson, United States Trustee, Appellee.**

**No. ND 06–10901–RR.**
**Adversary No. CV 07–04357 MMM.**

United States District Court,
C.D. California.

Nov. 24, 2009.

ORDER AFFIRMING JUDGMENT OF THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

MARGARET M. MORROW, District Judge.

Appellants Peter and Andrea Reed appeal an order of the bankruptcy court granting the United States Trustee's (hereinafter the "UST") motion to dismiss Appellant's bankruptcy case under 11 U.S.C. § 707(b)(2) and § 707(b)(3). The order was entered on the docket on May 29, 2007, and Appellants filed a timely notice of appeal under 28 U.S.C. § 158(c)(2) and Rule 8002(a) of the Federal Rules of Bankruptcy Procedure. This court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Debtors File for Bankruptcy Protection

On November 30, 2006, debtors Peter and Andrea Reed ("the Reeds") jointly filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[1] The Bankruptcy Code requires that debtors with primarily consumer debts file Official Form 22A (the "Means Test Form") with their bankruptcy schedules and statements.[2] The purpose of the Means Test is to calculate the debtors' ability to pay back creditors with monthly disposable income and in this manner to assess whether a "presumption of abuse" arises under 11 U.S.C. § 707(b)(2).[3] A "presumption of

Janet A. Lawson, Janet A. Lawson Law Offices, Ventura, CA, for Debtor.

---

1. Excerpt of Record (hereinafter "ER") at 1.

2. Appellee's Opening Brief at 4.

3. A presumption of abuse arises when a debtor's Means Test indicates that he or she has enough monthly disposable income to pay

abuse" arises when the Means Test indicates that the debtors have the ability to make monthly payments of $167 to creditors over a period of five years (or, stated otherwise, $10,000 over 60 months). The Reeds' Means Test Form indicated that the Reeds had a gross monthly income of $5,947.57; using this number, the Reeds calculated that they had no monthly disposable income.[4] On Official Form 61 (Schedule I and Schedule J), however, the Reeds admitted that their monthly income was $7,645, and they had monthly disposable income of $186.46.[5]

The UST contacted the Reeds' attorney to notify her of the discrepancy. The attorney, however, failed to address the problem prior to the first scheduled § 341(a) Meeting of Creditors on January 8, 2007.[6] At the § 341(a) meeting, the Reeds' attorney agreed to look into the discrepancy and make appropriate corrections.[7] The trustee continued the § 341(a) meeting to January 29, 2007; at the request of the Reeds' attorney, this date was later extended to February 20, 2007.[8]

On January 17, 2007, the UST filed a 10–Day Statement as required by 11 U.S.C. § 704(b)(1), stating that he could not determine whether a presumption of abuse arose in the Reeds' bankruptcy case.[9] The UST then sent a letter to the Reeds' attorney, requesting evidence that would verify the amounts set forth on the Reeds' Means Test Form.[10] After further evaluation, the UST filed a supplemental statement on February 15, 2007, stating that a presumption of abuse arose in this case. The following day, he filed a motion to dismiss Reeds' case under §§ 707(b)(2) and (b)(3).[11] The UST's assertion that there was a presumption of abuse was based on his finding that the Reeds had monthly disposable income of $576.51, exceeding the § 707(b)(2) statutory! threshold of $167.[12]

On the morning of the § 341(a) meeting for February 20, 2007, the Reeds filed a second Means Test Form that increased their CMI, but also increased their health

some or all of his or her debts over a period of five years. A debtor's ability to pay is dependent on Current Monthly Income (hereinafter "CMI") as defined in 11 U.S.C. § 101(10A). If the debtor's CMI is above the state median family income (as it was in this case), then monthly disposable income is calculated by subtracting from the CMI the expenses outlined in 11 U.S.C. § 707(b)(2)(A)(ii), (iii), and (iv). If the debtor's disposable income is equal to or exceeds $167 per month, a presumption of abuse arises. (Appellee's Brief at 4 (referring to the calculation laid out in the statute and noting that, at the time this case was filed, § 707(b)(2)(A)(i)(II) stated that the disposable income cutoff was $10,000 over 60 weeks or $167 per month).) The Reeds do not dispute that $167 is the statutory cut-off amount.

4. ER at 37–41.

5. ER at 24–25.

6. ER at 324–325.

7. ER at 326.

8. ER at 326–327.

9. ER at 77. 11 U.S.C. § 704(b)(1)(A) of the Bankruptcy Code states in part that the UST "shall review all materials filed by the debtor and, not later than 10 days after the date of the first meeting of creditors, file with the court a statement as to whether the debtor's case would be presumed to be an abuse under section 707(b)."

10. ER at 146.

11. ER at 80–83.

12. ER at 89. The Reeds maintain that a presumption of abuse does not arise based on the original Means Test numbers filed. However, the UST alleges that based on their actual wages, the Means Test *should* read $576.51.

care expenses from $318 to $611.54.[13] Because neither the UST nor his counsel had an opportunity to review the newly filed Means Test Form prior to the time set for the meeting, the trustee continued the meeting to March 12.[14] Neither the Reeds nor their attorney appeared at the March 12 meeting. The meeting J was again continued to April 2; on that date, only the Reeds' attorney appeared.[15]

On April 17, 2007, the Reeds filed a third Means Test Form containing adjustments to gross income, healthcare expenses, and a new monthly child care expense of $333.66.[16] Because of this new filing, the UST filed a motion to continue the hearing on his motion to dismiss so that the UST could examine the Reeds under oath and obtain support for the newly filed Means Test.[17]

**B. The Bankruptcy Court Grants UST's Motion to Dismiss Under §§ 707(b)(2) and (b)(3)**

On May 16, 2007, the bankruptcy court heard the UST's motion to dismiss.[18] The Reeds argued that the motion was time-barred because the UST had not met the Ten–Day Statement requirement set forth in § 704(b)(1).[19] The court rejected this argument, finding that the UST's January 17 filing satisfied the Ten–Day Statement requirement.[20] The court then turned to the merits of the motion. Although the Reeds had previously filed three Means Test Forms, the UST and the Reeds had apparently agreed on the numbers set forth on an unfiled fourth Means Test; these figures showed that the Reeds had monthly disposable income of $54.98 if the childcare expenses claimed by the Reeds were accepted.[21] The UST argued, however, that the Reeds' childcare expenses of $293 were unreasonable and should be added back into their monthly disposable income, bringing the total to $347.[22] Declining to consider the new means test, the bankruptcy court decided the motion using the numbers the Reeds had reported in their opposition to the UST's motion to dismiss.[23] It held that a presumption of abuse arose under § 707(b)(2) because the Reeds had disposable income of $500 to $770 a month that far exceeded the statutory limit.[24]

Alternatively, citing the totality of circumstances surrounding the Reeds' financial situation, the bankruptcy court determined that the case should be dismissed under § 707(b)(3). The court cited the Reeds' admission in their filings that they

---

13. Appellee's Brief at 11 (comparing ER at 37–41 with ER at 167–171).

14. ER at 330.

15. ER at 331–334.

16. The Reeds specify that their childcare expenses are $333.66 a month on line 30 of their Schedule J form. (ER at 221.) Based on the Reeds' childcare receipts, however, the UST calculated that the actual expense was $293.33. (ER at 303.)

17. The bankruptcy court continued the hearing from April 25 to May 16, 2007. (ER at 224–226.)

18. ER at 285.

19. ER at 297–298.

20. ER at 297.

21. ER at 290, 303.

22. ER at 302–303.

23. ER at 304.

24. The bankruptcy court calculated disposable income of $500 using the Reeds' amended tax returns. It calculated disposable income of $770 using the tax amounts reported on the Reeds' Schedule J. The presumption arose regardless of the number used. (ER at 304–305.)

had at least $186 in disposable income.[25] It also determined that the Reeds' claimed childcare expenses of $333 were unreasonable because their child was in school and Mrs. Reed was unemployed.[26] Using disposable income of $186, and adding back the childcare expenses, the bankruptcy court determined that a monthly surplus of $519 over sixty months could pay back 84 percent of the Reeds's unsecured debt. Consequently, it determined that the Reeds' filing was an abuse of Chapter 7.[27]

On May 4, 2007, the UST submitted a written order that was subsequently signed and entered by the bankruptcy court on May 29, 2007.[28] The Reeds' case was dismissed that day. They filed a timely notice of appeal on June 7, 2007.[29]

## II. DISCUSSION

### A. Standard of Review

The court reviews the bankruptcy court's factual findings for clear error. *Hebbring v. U.S. Trustee*, 463 F.3d 902, 905 (9th Cir.2006). Factual determinations such as debtors' monthly disposable income are "clearly erroneous" only when the reviewing court is left with a "definite and firm conviction that a mistake has been committed." *In re Young*, 237 B.R. 791, 795–96 (10th Cir. BAP 1999) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)); see also *In re Deadmond*, No. 06–60512–7, 2008 WL 191165, **1–2 (D.Mont. Jan. 22, 2008) (reviewing the bankruptcy court's determination of a debtor's monthly disposable income for clear error).

The bankruptcy court also addressed a number of procedural issues under § 707(b)(2). Its rulings on these issues were based on its interpretation of the Bankruptcy Code and are legal conclusions. The bankruptcy court's legal conclusions are reviewed *de novo. In re International Fibercom*, 503 F.3d 933, 940 (9th Cir.2007). Orders of dismissal under § 707(b) and whether to hold an evidentiary hearing, however, are reviewed under the more deferential abuse of discretion standard. *In re Khachikyan*, 335 B.R. 121, 125 (9th Cir. BAP 2005) ("An order dismissing a case for substantial abuse under § 707(b) is also reviewed for an abuse of discretion"). A court abuses its discretion if it does not apply the correct law or if it bases its ruling on a clearly erroneous view of the facts. The reviewing court cannot reverse for abuse of discretion unless it has a definite and firm conviction that there has been a clear error in judgment. *Id.* (citing *SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir.2001); *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 871 (9th Cir. BAP 2002)).

### B. 11 U.S.C. § 707(b) After the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which made certain modifications to the Bankruptcy Code, took effect on October 17, 2005. As its name indicates, BAPCPA's goal was to "ensure that the system is fair for both debtors and creditors," and to "ensure that debtors repay creditors the maximum they can afford." H.R.Rep. No. 31(1), at 2, 109th Cong., 1st Sess. (2005) reprinted in 2005

---

25. ER at 294, 300.

26. ER at 294.

27. ER at 295.

28. ER at 247.

29. ER at 251

U.S.C.C.A.N. 88. The statute revised § 707(b) to lower the standard for dismissal of a Chapter 7 petition from "substantial abuse" to "mere abuse." It also removed the presumption that debtors were entitled to relief. *In re Bender,* 373 B.R. 25, 28 (Bankr.E.D.Mich.2007).

Rather than a presumption that debtors are entitled to relief, Congress implemented a means test under § 707(b)(2) to determine whether a presumption of abuse arises. If such a presumption arises, the case is subject to dismissal under § 707(b)(2). *In re Naut,* No. 07–20280REF, 2008 WL 191297, *3 (Bankr. E.D.Pa. Jan.22, 2008) (stating that BAPC-PA "permits a bankruptcy court to dismiss or convert a chapter 7 bankruptcy ... if granting the debtor relief would be an 'abuse' of the provisions of chapter 7"). Whether or not a presumption of abuse arises is based on the debtors' current monthly income or CMI. If the debtor's CMI is below the state median (an "under the median debtor"), there is no presumption of abuse under § 707(b)(2). *Id.* at *4 (where the CMI falls below the median, a "safe harbor exists and a presumption of abuse will not arise"). Where the debtor's CMI exceeds the state median (an "over the median debtor"), the Bankruptcy Code requires that the debtor's monthly disposable income be calculated by subtracting categories of expenses set forth in § 707(b)(2)(A)(ii), (iii), and (iv).

Based on this calculation, if debtor's monthly disposable income exceeds $167 a month (or $10,000 over a period of 60 months), a presumption of abuse arises and the debtor's case can be dismissed under § 707(b)(2). *Id.* at *4. If the debtor rebuts the presumption of abuse by proving that there are "special circumstances"

that require additional expenses, the UST can nonetheless seek dismissal under § 707(b)(3), arguing that the debtor's filing was in bad faith, or that the totality of the debtor's financial circumstances do not warrant bankruptcy relief. *Id.* at *3 (stating that if "the presumption of abuse [under § 707(b)(2)] does not arise, or ... is rebutted, Section 707(b)(3) directs the court to consider ... debtor's bad faith filing ... or the totality of the circumstances of the debtor's financial situation"). If the debtor's monthly disposable income falls below $167 a month, a presumption of abuse does not arise under § 707(b)(2); the case can, however, be reviewed for abuse under the totality of the circumstances or bad faith tests of § 707(b)(3). *Id.*

The BAPCPA revisions also imposed new duties on the UST. Within ten days after the first meeting of the creditors under § 341(a), the UST must review all materials filed by the debtor and file a "statement as to whether" the debtor's case gives rise to a presumption of abuse. 11 U.S.C. § 704(b)(1)(A). Within thirty days of the filing of this statement, the UST must file either a motion to dismiss the debtor's case or a statement as to why he does not believe dismissal is appropriate.[30] 11 U.S.C. § 704(b)(2).

### C. Dismissal under 11 U.S.C. § 707(b)(2)

#### 1. Whether the Motion to Dismiss under § 707(b)(2) Was Time–Barred

The Reeds argue that the bankruptcy court erred in dismissing their case because the UST's motion to dismiss was time-barred by his failure to file a timely

---

**30.** § 707(b)(2) also permits the UST to convert debtor's case into Chapter 11 or Chapter

13 with debtor's consent.

Ten–Day Statement.[31] Courts are split as to whether the Ten–Day Statement requirement is in the nature of a statute of limitations. In *In re Cadwallder*, No. 06–36424, 2007 WL 1864154, *6 (Bankr. S.D.Tex. June 28, 2007), the bankruptcy court analyzed § 704(b) and determined that on its face, the statute does not impose consequences for failing to meet the Ten–Day Statement requirement. The *Cadwallder* court cited *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 159, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003), which held that if a statute does not specify a consequence for noncompliance with a statutory deadline, federal courts should not impose their own coercive sanction. The *Cadwallder* court concluded that barring a motion to dismiss would be such a coercive sanction. 2007 WL 1864154 at *6.[32]

Most courts addressing the issue, however, have held that the 10–day deadline represents ! an enforceable time bar to a motion to dismiss. In *In re Singletary*, 354 B.R. 455 (Bankr.S.D.Tex.2006), a bankruptcy court in Texas assumed that the Ten–Day Statement imposed a deadline and applied it without further analysis. *Id.* at 466 n. 10 ("[T]he UST has up to 10 days after the meeting of the creditors to file a statement setting forth whether the debtor's case would be presumed to be an abuse"). Other courts have discussed the procedural requirements of § 704(b)(1) in more detail and found that in the absence of a timely filed statement, the UST is precluded from filing a motion to dismiss based on a presumption of abuse. See *In re Robertson*, 370 B.R. 804, 811 (Bankr. D.Minn.2007) (denying a motion to dismiss "for want of a statutorily prescribed prerequisite"); *In re Perrotta*, 378 B.R. 434, 438 (Bankr.D.N.H.2007) (holding that Con-

gress intended, in setting a deadline for the filing of the Ten–Day Statement, to have the UST lose the benefit of the presumption of abuse, but that failure to meet the deadline did not preclude the UST from filing a motion to dismiss under § 707(b)(3)); see also *In re Byrne*, 376 B.R. 700, 703 (Bankr.W.D.Ark.2007) ("In the absence of a timely filed statement . . . the UST is precluded from filing a motion to dismiss").

The *Robertson* court emphasized the use in § 704(b)(1)(A) of the prescriptive "shall," and concluded that such language established "procedural prescriptions as essential prerequisites for any subsequent motion." *Robertson*, 370 B.R. at 809. It noted that § 704(b)(2) requires any motion for dismissal based on a presumption of abuse to be filed within thirty days of the Ten Day Statement, and found "[i]t . . . undeniable that a motion that invokes the presumption can be made only if the UST has already, timely, put of record his unequivocal conclusion that the presumption lies in the case." *Id.* at 811.

Although § 704(b)(*l*) does not delineate the consequences if the UST fails to file a timely Ten–Day Statement invoking a presumption of abuse, this court agrees with the majority of courts that have held that Congress intended to impose a mandatory deadline. One of the goals of the BAPCPA revisions to the Bankruptcy Code was to streamline case administration by implementing a series of measures that required debtors to comply with strict deadlines. *Robertson*, 370 B.R. at 811 (citations omitted).

Given this fact, it is unlikely that Congress intended to relax the time standards

---

**31.** Appellant's Opening Brief at 1.

**32.** The *Cadwallder* court noted, however, that the Federal Rules of Bankruptcy Procedure

provided "a uniform and clear deadline for filing" such a motion, i.e., sixty days after the § 341(a) meeting. *Id.* at *6.

governing responsive action by the UST. *Id.* Consequently, the court concludes that the failure to file a timely Ten–Day Statement under § 704(b)(1) precludes the filing of a motion to dismiss under § 707(b)(2).

### 2. Whether the UST Filed a Timely Ten–Day Statement Under § 704(b)(1)

#### i. The January 17 Statement

 The UST argued, and the bankruptcy court found, that the statement filed on January 17, 2007 (9 days after the first meeting of the creditors) was a valid and timely statement that controlled "whether" the Reeds could be presumed to be an abuse.[33] The Reeds contend that the January 17 statement did not comply with the statutory requirements of § 704(b)(1) because it did not adequately state "whether or not" a presumption of abuse arose.[34] The starting point in discerning congressional intent in enacting a statute is the statutory language; unless application of the plain language would lead to an absurd result, the court should enforce its clear terms. *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). 11 U.S.C. § 704(b)(1) states that

> "the United States trustee (or the bankruptcy administrator, if any) shall review all materials filed by the debtor and, not later than 10 days after the date of the first meeting of creditors, file with the court *a statement as to whether the debtor's case would be presumed to be an abuse* under section 707(b)" (emphasis added).

The UST argues that a "statement as to whether" is not restricted to a binary choice of "yes" or "no," but also includes a statement that the UST cannot determine *whether* the presumption arises.[35]

The bankruptcy court in *Robertson* examined the meaning of "whether" as used in the' statute, and concluded that it required an election as to whether there *is* or *is not* a presumption of abuse. 370 B.R. at 810 ("The word 'whether' is dictionary-denoted as 'a function word ... to indicate ... (2) an indirect question involving alternatives ...; (3) alternative conditions or possibilities ...'... As such, this requires an election between two specific representations, to be made right in the text of the UST's statement. Both of those representations are to go in an unequivocal fashion to the UST's estimation of the legal posture of the case in light of § 707(b)(2). There either is or is not a presumption of abuse, ... [which leaves] no room for an equivocal placeholder"). Other bankruptcy courts agree. See *Byrne*, 376 B.R. at 702 (agreeing with the debtor that § 707(b)(2) "requires a statement that the case either is or is not an abuse, not that the UST cannot make the determination"); *Perrotta*, 378 B.R. at 438 (stating that § 704(b)(2), which requires that within thirty days of the filing of the Ten Day Statement, the UST must file a motion to dismiss or a statement as to why no motion is being filed, "would make no sense when applied to a statement indicating that the UST cannot make a determination").

The court agrees with the conclusion that the Ten–Day Statement must include an unequivocal statement as to whether the case is or is not an abuse. The language of the statute is clear that the UST must inform the debtor "whether" it intends to file a motion to dismiss. The fact that there is a deadline for making that

---

**33.** ER at 297.

**34.** Appellant's Brief at 8–9.

**35.** Appellee's Brief at 18–19.

statement indicates that Congress intended that the information be communicated as quickly as possible. It would thus be odd if the UST could meet the 10–day deadline by filing an equivocal response. Rather, to satisfy the statutory requirement, the Ten Day Statement must state clearly the UST's conclusion as to whether the case is presumed to be an abuse.

### ii. The February 15 Statement

█ The UST contends that, even if the January 17 statement was inadequate, the February 15 supplemental filing independently satisfied the statutory requirement of providing a "statement as to whether" a presumption of abuse applied.[36] There is no dispute that the substantive content of the February 15 supplemental filing provided sufficient notice of abuse.[37] Although it was regularly continued on various occasions through May 14, 2007, the § 341(a) meeting commenced on January 8, 2007.[38] The amended statement filed February 15, 2007 thus came 37 days after the start of the § 341(a) meeting. It is well established that a § 341(a) meeting can be continued; indefinitely if the trustee announces a continued date before adjourning the meeting or within a reasonable time thereafter. *In re Smith*, 235 F.3d 472, 476 (9th Cir.2000). The primary issue here is whether the ten-day period for filing a statement under § 704(b)(1) begins to run from the date a § 341(a) meeting commences or the date that meeting concludes.

The Reeds argue that the supplemental statement that the UST filed on February 15, 2007 was untimely because the ten-day period began to run on January 8, 2007, the day the § 341(a) meeting commenced. They cite *In re Close*, 353 B.R. 915, 918 (Bankr.D.Kan.2006), in which the bankruptcy court interpreted the plain language of the phrase, "not later than 10 days after the date of the first [§ 341(a) meeting]," to mean ten days after the date on which the first § 341(a) meeting was set. The *Close* court reasoned that if the Ten–Day Statement deadline started to run only upon *conclusion* of the § 341(a) meeting, the deadline would be subject to manipulation by the trustee. *Id.* It feared that trustees would abuse the discretion granted to them to adjourn and continue § 341(a) meetings for months, and unilaterally extend the statutory deadline in this fashion. *Id.*

The *Cadwallder* court reached a different conclusion, holding that the ten days in which the UST must file his statement runs from the conclusion of the creditors' meeting rather than from its commencement. See *Cadwallder*, 2007 WL 1864154 at *13 ("The ten days in which the U.S. Trustee must file his statement runs from the end of the creditors' meeting, not the commencement of the creditors' meeting"); see also Alan N. Resnick, 6 Collier on Bankruptcy § 704.17[1], at 704–36 to 704–37 (rev. 15th ed.2006) (stating that the "first meeting of the creditors" deadline refers to the conclusion of the § 341(a)

36. The UST's January 17, 2007 statement read: "[T]he United States Trustee is currently unable to determine whether the Debtor's case would be presumed to be an abuse under Section 707(b) of the Bankruptcy Code." The subsequent filing on February 15, 2007 stated: "Based on the information the Debtors have provided to date, the United States Trustee has determined that a presumption of abuse arises in the present case." (ER at 77, 81.)

37. *Appellant's Brief* at 9 ("[t]he notice of abuse was filed on 2/15/2007").

38. ER at 317–19 (docket entries indicating the first § 341(a) meeting took place on January 8, 2007 and the last on May 14, 2007).

meeting).[39] In *Cadwallder*, the meeting of the creditors was continued twice so that the debtor could provide additional information. The UST filed a Ten–Day Statement nine days after the conclusion of the meeting (which was thirty-seven days after the commencement of the meeting). See *Cadwallder*, 2007 WL 1864154 at *1. The court reasoned that it would be illogical to require the UST to decide whether a presumption of abuse arose within ten days of the commencement of the meeting if the debtor failed to attend the meeting or to provide adequate information in advance of that date. See *id.* at *13. The UST in *Cadwallder* continued the § 341(a) meeting so that he would have more time to review the information submitted by the debtor. See *id.* at *1. Presumably there are often discrepancies in the information submitted by debtors; continuing the § 341(a) meeting allows the UST to gather needed information before conducting the meeting. The *Cadwallder* court reached the logical conclusion that the UST should not be required to decide whether a presumption of abuse arises until he has had a full and fair opportunity to examine the debtor's means test.

The court agrees with *Cadwallder* and Collier that the time from which the ten-day period under § 704(b) notice does not begin to run until the conclusion of the § 341(a) meeting. As in *Cadwallder*, the reason the UST continued the § 341(a) meeting in this case was to allow the Reeds to correct the discrepancy between the CMI reported in their Means Test Form and that reported on their amended schedules.[40] To require the UST to make an immediate determination of abuse based on incomplete or inaccurate information would not only be illogical, but would be contrary to BAPCPA's goals of restoring "integrity in the bankruptcy system" and "ensur[ing] that the system is fair to both debtors and creditors." H.R.Rep. No. 31(I), at 2, 109 Cong., 1st Sess. (2005), reprinted in 2005 U.S.C.C.A.N. 88, 97. Requiring an immediate determination regardless of the adequacy of the information provided at the § 341(a) meeting would likely result in incorrect presumptions of abuse. Moreover, a debtor could avoid the filing of a ten-day notice by submitting ambiguous or incorrect information in preparation for the first § 341(a) meeting and correcting it once the ten-day window had closed. Stated differently, adopting the *Close* court's rule would provide a bad incentive for debtors in the same way that that court fears the opposite rule would provide a bad incentive for the UST.

The strongest argument against adoption of the rule advocated in *Cadwallder* and Collier is the fact that § 704 states that the ten-day period runs from the "first" meeting as opposed to the "meeting." Prior to the BAPCA, the understanding was that the "first meeting of creditors" was not a discrete moment, but could stretch over a period of time. See *In re Spenler*, 212 B.R. 625, 627 (9th Cir. BAP 1997) ("The first meeting of creditors began on August 4, 1995, and, after two continuances, was concluded on September 29, 1995"). As the *Cadwallder* court noted, "[t]he word 'first' in the statute is problematic. Although § 704(b) refers to 'the first meeting of creditors' the statutory provision that defines the meeting,

---

**39.** See also, Mark A. Neal, Sandra Manocchio, Means Testing: The Heart of BAPCPA, 40 JUN Md. B.J. 26, 28 (May/June 2007) ("Once a case has been identified as presumptively abusive, the U.S. Trustee must file a statement of presumed abuse within 10 days *after the conclusion* of the first meeting of creditors" (emphasis added)).

**40.** ER at 325.

§ 341(a), does not use the word 'first.' The statutory language is 'meeting of creditors' and 'a meeting of creditors.' It does not refer to a 'first' meeting of creditors. But there is no provision for a 'second' or subsequent meeting of creditors. So what does 'first' mean?" *Cadwallder*, 2007 WL 1864154 at *12.

The court observed that, in common parlance, the meeting required by § 341 is referred to interchangeably as "the 341 meeting," the "first meeting of creditors," the "creditors' meeting," and the "meeting of creditors." See *id.* (citing 6 Collier on Bankruptcy § 704.17[1]). The meeting triggers a number of deadlines, but the statute is not consistent in identifying *how* the trigger operates.[41] In some instances, it clearly states that the relevant date is the "first date set" for the meeting; in others, the date is not specified with precision. Congress clearly knew how to specify that the trigger date be the "first date set" for the meeting when it so intended. The fact that it did not do so when setting a deadline for the filing of the Ten–Day

Statement indicates that § 704(b)'s reference to "first meeting" is refers to the meeting as a whole rather than the first date it is set.[42] The statutory language is consistent with common parlance, which often denominates the § 341(a) meeting in its entirety the "first meeting of creditors."

For these reasons, the court finds that the ten-day period runs from the conclusion of the § 341(a) meeting rather than its commencement. As reflected in the UST's initial Ten–Day Statement,[43] the Reeds provided conflicting CMI information that made an accurate determination regarding the presumption of abuse within ten days of the commencement of the § 341(a) meeting impossible.[44] The UST filed a supplemental Ten–Day Statement on February 15, 2007, almost one week prior to the first continued date.[45] This supplemental filing was timely-it occurred before the meeting concluded. Because it clearly stated that a presumption of abuse had arisen, it substantively satisfied the Ten–Day Statement requirement of § 704(b)(1). Consequently, the UST's mo-

---

**41.** See, e.g., 11 U.S.C. § 521(a)(2)(B) ("within 30 days after the first date set for the meeting of creditors ..."); *id.* § 521(a)(6) ("not later than 45 days after the first meeting of creditors ..."); *id.* § 521(e)(2)(A)(i) ("not later than 7 days before the date first set for the meeting of creditors ..."); *id.* § 1308(a) ("not later than the day before the date on which the meeting of the creditors is first scheduled to be held under section 341(a)"); *id.* § 1324(a) ("not earlier than 20 days and not later than 45 days after the date of the meeting of creditors under section 341(a)").

**42.** The statute consistently refers to the "meeting of the creditors" as a singular event. See 11 U.S.C. § 1308(a) ("not later than the day before the date on which the meeting of the creditors is first scheduled to be held under section 341(a)"). The fact that the statute refers to a "first date set" contemplates continuances of the meeting and the possibility that it will occur on multiple dates. To conclude that "first meeting" refers only to

the date first set would mean that each continued date on which the meeting convened constituted a new and different meeting. This interpretation is at odds with the import of the statute.

**43.** The fact that the UST filed a statement ten days after the first scheduled date for the § 341(a) meeting demonstrates that there is some confusion as to when the ten-day period begins to run. As noted, courts are not in agreement on this point.

**44.** Because the Reeds reported contradictory CMIs that varied by approximately $1,700, the UST could not determine what their true disposable monthly income was. (Appellee's Brief at 9.) Since a presumption of abuse arises when Disposable Monthly Income exceeds $167, it was impossible for the UST to determine whether a presumption of abuse arose. (*Id.* at 4.)

**45.** ER at 80.

tion to dismiss under § 704(b)(2) was timely.[46]

### 3. Whether Dismissal under § 707(b)(2) Was Appropriate

Unless rebutted, a finding that there is a presumption of abuse under the Means Test provides adequate justification for dismissal under § 707(b)(2). *In re Scarafiotti*, 375 B.R. 618, 623 (Bankr.D.Colo. 2007) (stating that once the "presumption of abuse arises ... the debtor must show special circumstances sufficient to rebut the presumption, in order to avoid involuntary dismissal"). Thus, the bankruptcy court's dismissal under § 707(b)(2) was proper so long as a presumption of abuse arose and the Reeds did not rebut it. The bankruptcy court determined that there was a presumption of abuse under § 707(b)(2) based on the figures recited in the Reeds' opposition to the UST's motion to dismiss.[47] It noted that even if it were to use different values found in different filings, the Reeds' net income would still exceed the statutory limit.[48]

Prior to the hearing on the motion to dismiss, the UST and the Reeds had agreed on a new Means Test Form, which reflected monthly net income of $54.98.[49] The new Means Test was not filed before the hearing, and the bankruptcy court refused to consider it.[50]

Because the court ruled verbally, the only indication of its view of the evidence is found in the hearing transcript. The court stated that the presumption arose "because I used the document that [the Reeds] filed with [their] opposition and you know, this is the day for the hearing. It is not whatever you decide some other time. If anybody wanted me I spent a long time preparing for this. I looked through all these papers. I read cases.... It seemed to me that the $7,800 a month which [the UST] had put in [his] papers seemed right since [the Reeds' number] was based on four months plus something, less than five months or less than six months for sure. Then I took the means test and it was clearly—it's even on [debtors' counsel's] figures. It would provide-I came up with a net of $770.00 because I used taxes from schedule J, not from the means test. They should be the same figure. Even using [debtors' counsel's figures] it was over $500.00 a month"[51] The bankruptcy court's determination that the Reeds' disposable net income was between $500 and $770 is a finding of fact that must be reviewed for clear error. The bankruptcy court ruled on the basis of

**46.** 11 U.S.C. § 704(b)(2) requires that within thirty days of filing the Ten–Day Statement, the UST must file either a motion to dismiss under § 707(b)(2) or a statement as to why dismissal is inappropriate. Since the UST filed its supplemental statement on February 15, and its motion to dismiss on February 16, the motion to dismiss was timely.

**47.** ER at 304; see also *id.* 194–98.

**48.** The court "came up with a net of $770.00 because [the court] used taxes from schedule J, not from the means test. They should be the same figure. Even using [the Reeds' figures] it was over $500.00 a month." (ER at 304–05.)

**49.** ER at 290, 303.

**50.** When the Reeds' attorney attempted to bring up the revised figures on which the debtors and the UST had agreed, the bankruptcy court stated: "I don't care what you agreed with [the UST]. If he's using cockamamie numbers too, I'm not going to approve it." (ER at 295.) The new means test was never filed and is not part of the record. The court is thus unable to evaluate whether or not the parties' representations regarding it were well founded.

**51.** ER at 304–05.

the evidence that had been submitted prior to the hearing; it declined to consider the new means test to which the parties had agreed, but which had not yet been filed.[52] The papers submitted to the court, on which it relied, included the second amended means test and Schedules I and J.[53] Using these numbers, together with supporting pay stubs and the calculations provided in the papers, the court determined that a presumption of abuse arose. Thus, based on a review of the materials that had been filed, the court concluded that a presumption of abuse arose and that the case should be dismissed under § 707(b)(2).

The first question the court must address is whether the bankruptcy court's conclusion based on the facts before it constituted clear error. Although the Reeds argue that they reached an agreement with UST, they do not proffer evidence that the bankruptcy court's calculations were incorrect or that its determination that a presumption of abuse arose and was not rebutted constituted clear error. Instead, the Reeds' argument with respect to the bankruptcy court's decision under § 707(b)(2) is focused almost entirely on whether the UST's Ten–Day Statement was timely.

To the extent the Reeds challenge the bankruptcy court's factual conclusion that a presumption of abuse arose under § 707(b)(2), they do not dispute the court's calculations and conclusions based on the evidence before it; rather, they challenges the court's decision · not to consider the unfiled means test.[54] An appellate court will not consider "issues which are not specifically and distinctly argued and raised in a party's opening brief." *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir.2001) (citing *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1110 n. 1 (9th Cir.2000) (en banc)). As the en banc court in *Barnett* stated, "[w]e will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim." *Barnett,* 228 F.3d at 1110 n. 1. As the Reeds do not dispute the accuracy of the bankruptcy court's calculations and conclusions based on the record evidence, the court will not independently look for errors in its reasoning.

The bankruptcy court's decision not to consider the unfiled means test is essentially an evidentiary ruling. Such rulings are reviewed for abuse of discretion. *In re Gergely,* 110 F.3d 1448, 1452

---

**52.** The precise scope of the parties' agreement is not clear. At the hearing, the UST stated that "[the Reeds'] figures that [they] came up with Monday or Tuesday ... -again, it's not a filed means test but it appears correct that $54.98 but that is net.... Net income. What we are arguing about is the child care expenses of $293.00." (ER at 302.)

**53.** The UST submitted the original means test, together with schedules I and J, in support of his motion to dismiss. (See ER at 101–05, 130–31.) The Reeds submitted the Second Amended Means Test and a copy of Schedule J with their opposition. (See ER at 194–98, 217.) It appears that the Reeds filed only one version of Schedules I and J. Schedule I provides an itemized calculation of the current income of the individual debtors. (See ER at

130.) Schedule J provides an itemized calculation of the current expenditures of the individual debtors. (See ER at 131.)

**54.** The only argument the Reeds advance regarding the bankruptcy court's factual finding is the assertion that the court should have considered the third amended means test, which the UST had agreed was accurate, and which showed disposable income of $54.98. (Appellant's Opening Brief at 27.) This argument occupies less than half of a page of the Reeds' 28 page opening brief. While the Reeds argue that the bankruptcy court erred in declining to consider a evidence that was not presented to it until the day of the hearing, they do not explain why that decision was erroneous.

(9th Cir.1997) (citing *In re Sternberg*, 85 F.3d 1400, 1408 (9th Cir.1996)). "A bankruptcy court does not abuse its discretion when it excludes evidence that was not submitted pursuant to the specified procedure." *In re Planet Pro, Inc.*, 214 Fed. Appx. 646, 647 (9th Cir. Dec.20, 2006) (Unpub.Disp.) (citing *Gergely*, 110 F.3d at 1452). The local bankruptcy rules of the Central District of California state that any documentary evidence on which a party wishes to rely in opposing a motion must be filed "not later than 14 days before the date designated for a hearing." Ca CD L.B.R. 9013–1(a)(7). A party who files a document after the time for filing has expired under the local rules is subject to sanctions. See *id.*, Ca CD L.B.R. 9013–1(3). As the Ninth Circuit has held, "[u]nder our deferential standard of review, we conclude that the bankruptcy court [does] not abuse its discretion in excluding" evidence that "was submitted after the time permitted by the local rules of the bankruptcy court." *Planet Pro*, 214 Fed.Appx. at 647; see *In re Pike*, 243 B.R. 66, 69 (9th Cir. BAP 1999) ("The bankruptcy court has broad discretion to apply its local rules. Katz's appraisal was found to be untimely, and the court, in its discretion, did not consider that evidence," citing *Qualls By and Through Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 842 (9th Cir.1994)).

It does appear that the parties agreed just prior to the hearing on numbers that differed from those submitted to the bankruptcy court. The UST did not withdraw its motion to dismiss under § 707(b)(2), however, and Judge Riblet acted within her discretion in declining to consider a fourth means test that the Reeds did not attempt to file until the day of the hearing.

Although the Reeds suggest they were unaware of certain deficiencies in their calculations until the weekend before the hearing, they clearly had ample time to review the means tests that had been filed and to submit the updated information before the day of the hearing. The Reeds initiated the bankruptcy proceeding in November 2006. The hearing on the UST's motion did not take place until May 2007.[55] The bankruptcy court relied on numbers submitted in support of the Reeds' opposition to the motion, which was filed on March 26, 2007. The Reeds do not explain in any way why it took so long to prepare a further amended means test. Given the lack of explanation or justification for their delay, the bankruptcy court did not abuse its discretion in declining to consider the fourth means test.

In sum, the court finds that the UST's motion to dismiss was not time-barred. The Reeds have not argued on appeal that the bankruptcy court's factual finding that a presumption of abuse arose was incorrect or unsupported. Rather, they contended that the court erred in declining to consider the fourth means test. Because the bankruptcy court did not abuse its discretion in declining to consider the new means test, dismissal under § 707(b)(2) was appropriate.

**D. Dismissal Under 11 U.S.C. § 707(b)(3)**

■ Because the court concludes that dismissal under § 707(b)(2) was appropriate, it upholds the bankruptcy court's order granting the motion to dismiss. Even were the court to conclude that the bankruptcy court abused its discretion in dismissing under § 707(b)(2), however, it would have to address whether dismissal

---

**55.** In the intervening time, the § 341(a) meeting was continued numerous times so that the Reeds could address discrepancies between

their documentation and multiple amended means tests.

was appropriate under § 707(b)(3), as the bankruptcy court relied on this provision in the alternative. It stated:

> "The ruling is on (b)(3). It is also on (b)(2) . . . . [O]n (b)(3)[,] [u]nder all the circumstances, as long as Mrs. Reed is not working and her son is in school being six years old, she's not entitled. It's not a reasonable expense to have $333.00 a month for child care. Now I know of no circumstances which make that reasonable. So the motion is granted." [56] As is clear, separate and apart from the presumption of abuse under § 707(b)(2), the bankruptcy court found that the case should be dismissed under § 707(b)(3). This ruling is reviewed for abuse of discretion.

As a threshold matter, the Reeds question whether abuse can be found under § 707(b)(3) because the they are over the median debtors [57] who claim to have rebutted the presumption of abuse under § 707(b)(2).[58] 11 U.S.C. § 707(b)(3) states that:

> "In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case *in which the presumption [of abuse]* in [under § 707(b)(2)] *does not arise or is rebutted,* the court shall consider . . . the totality of the circumstances" (emphasis added).

The plain language of the statute is unambiguous. Section 707(b)(3) applies where the presumption of abuse does not arise, or as the Reeds claim was the case here, where the presumption of abuse under § 707(b)(2) is rebutted. The bankruptcy court in *Singletary* affirmed this interpretation of the statute, stating that a debtor may still face dismissal under § 707(b)(3) even if a presumption of abuse has not arisen under § 707(b)(2) or has been rebutted. *Singletary,* 354 B.R. at 461. See also *Byrne,* 376 B.R. at 703 (the UST can file a motion to dismiss under § 707(b)(3) against an above the median income debtor who asserts that a presumption of abuse does not arise). Thus, even had the Reeds successfully rebutted the presumption of abuse under § 707(b)(2), the UST was entitled to seek dismissal under § 707(b)(3).[59]

---

56. ER at 305.

57. An "over the median debtor" is a debtor whose annualized current monthly income exceeds the state median. A presumption of abuse can arise only if the debtor's current monthly income exceeds the state median for a household of like size. *In re Naut,* 2008 WL 191297 at *4 ("If the debtor's annualized current monthly income exceeds the state median income for the same household size, the debtor's current monthly income must then be reduced by certain standardized and actual expenses, as described in Section 707(b)(2)(A)(ii) through (iv), to determine if a presumption of abuse arises").

58. Rebutting a presumption of abuse under § 707(b)(2) requires that the debtor prove "special circumstances" that justify additional monthly expenses; this necessitates evidence that there is "no reasonable alternative other than to allow the additional expense." *Scarafiotti,* 375 B.R. at 625.

59. The Reeds contend that they rebutted the presumption of abuse by filing further amended means tests. They do not challenge the bankruptcy court's factual finding that a presumption of abuse arose, or the calculations it used to support such a conclusion. In the main, the Reeds argue that the UST's motion was untimely. It is thus unclear how the Reeds believe they rebutted the presumption of abuse. Had the Reeds prevailed on their timeliness argument under § 707(b)(2), the court would look to § 707(b)(3) not because the presumption of abuse had been rebutted, but because the UST had failed to establish the existence of a presumption in the first instance. Presumably, the Reeds rely on the fourth amended means test; to rebut the presumption under § 707(b)(2), however, the Reeds would still have had to show that special circumstances justified the claimed child care expenses. It is clear from the bankruptcy court's comments on the record that it did not deem that outlay to be reasonable.

### 1. Whether A Ten–Day Statement Is Required for Dismissal Under

 § 707(b)(3) Even had the court concluded that the UST failed to file a timely Ten–Day Statement under § 704(b)(1) and thus that he was barred from seeking dismissal of the Reeds' case under § 707(b)(2), the untimely Ten–Day Statement would not prevent the UST from seeking dismissal under § 707(b)(3). In *Byrne*, the UST filed a Ten–Day Statement similar to the first one filed in this case, stating that whether or not a presumption of abuse arose could not immediately be determined. *Id,* at 702. The bankruptcy court determined that this statement did not meet statutory requirements, and thus dismissal under § 707(b)(2) was barred. *Id.* It held, however, that "the ten day statement under § 704(b)(1) is superfluous to a filing under § 707(b)(3)," and that "[e]ven though the UST failed to file a definitive statement as required under § 704(b)(1), ... [she] still ha[d] the right to proceed under § 707(b)(3). . . . " [60] *Id.* at 704; see *Perrotta,* 378 B.R. at 438 ("Of course, nothing in § 704(b) prevents the UST from filing a motion to dismiss under § 707(b)(3) where the burden of proof will rest on the UST. [Citation omitted.] Where no presumption of abuse arises, the thirty-day deadline in § 704(b)(2) does not apply to the UST"); *In re dePellegrini,* 365 B.R. 830, 831 (Bankr.S.D.Ohio 2007) ("Where a pre-

sumption of abuse arises, a motion to dismiss under § 707(b)(2) must be filed within 30 days after the filing of the § 704(b)(1) statement. However, where there is no presumption of abuse, a motion to dismiss under § 707(b)(3) must be filed within 60 days after the date first set for the § 341 meeting of creditors").

As the *Byrne* court held, dismissal of a debtor's case under § 707(b)(2) and dismissal under § 707(b)(3) are distinct alternatives. The time limitations imposed by § 704(b)(1) apply only to motions to dismiss under § 707(b)(2). Motions under § 707(b)(3) are governed by the broader rule that a motion to dismiss for substantial abuse must be brought within 60 days of the first date set for the § 341(a) meeting of creditors. *See* Fed. R. Bankr.Proc. 1017(e)(1) ("A motion to dismiss a case for substantial abuse may be filed by the United States trustee only within 60 days after the first date set for the meeting of creditors under § 341(a), unless, on request filed by the United States trustee before the time has expired, the court for cause extends the time for filing the motion to dismiss"). Because the UST's motion was filed within 60 days of the first scheduled meeting of creditors, the UST was not precluded from seeking dismissal of the Reeds' case under § 707(b)(3), notwithstanding any procedural defect that may have affected his motion under § 707(b)(2).

---

**60.** The full text of the *Byrne* court's statement is as follows: "[The UST] still has the right to proceed under § 707(b)(3) *based on the debtor's representation that a presumption does not arise in this case*." *Id.* at 704 (emphasis added). This italicized portion of the court's statement addressed an issue that is not present here. Section 707(b)(3) states that to seek dismissal under that section, a presumption must either not have arisen or have been rebutted. In *Byrne,* a presumption had arisen, but the matter could not be dismissed under § 707(b)(2) because the UST's Ten–Day

Statement was insufficient. Because the debtor did not rebut the presumption of abuse, § 707(b)(3) was arguably inapplicable. The debtor, however, had stated on his Means Test Form that "a presumption did not arise." Based on this representation, the court held that the provisions of § 707(b)(3) applied. *Id.* The Reeds' case, by contrast, was subject to dismissal under § 707(b)(3) either because (1) a presumption arose under § 707(b)(2), which the Reeds rebutted it; or (2) their monthly disposable income was only $54.98 and no presumption of abuse arose.

## 2. Whether Dismissal Under § 707(b)(3) Was an Abuse of Discretion

The bankruptcy court dismissed the Reeds' case under the totality of the circumstances test of § 707(b)(3) because it found that their monthly child care expenses were unreasonable and they had between $500–$700 in disposable monthly income.[61] The Reeds argue that "ability to pay" is an analysis reserved for and incorporated in the Means Test of § 707(b)(2). Thus, they assert, considering their ability to pay under § 707(b)(3) was "duplicative and unnecessary."[62] The Reeds cite *In re Nockerts*, 357 B.R. 497, 506 (Bankr. E.D.Wis.2006), in which the bankruptcy court stated that it would be "surplusage" to "apply the means test, dislike the result, and then examine the debtor's ability to [pay] under § 707(b)(3)." The Reeds' citation of *Nockerts* is incomplete. After making this observation, the *Nockerts* court continued: This Court is not suggesting that the debtor's ability to pay should not be considered as a factor in the 'totality of the circumstances' test, or that passing the means test ends the inquiry. . . . "[W]hile [the] ability to pay *is a factor in the totality of circumstances test,* and may even be the *primary factor to be considered,* if it is the only indicia of abuse, the case should not be dismissed under that test." *Id.* at 506–07 (emphasis added).

In a case similar to this one, the debtors in *In re Barnett* No. 06–62414, 2007 WL 4510277 (Bankr.N.D. Ohio Dec 18, 2007), argued that the bankruptcy court could not rely solely on their ability to pay in determining whether dismissal was appropriate under § 707(b)(3) because a presumption of abuse had not arisen under the Means Test of § 707(b)(2). *Id.* at *3. The *Barnett* court concluded, to the con-trary, that both § 707(b)(2) and § 707(b)(3) permit review of debtors' ability to pay. See *id.* ("[The] fact that the presumption of abuse does not arise under section 707(b)(2) has no bearing on the inquiry under section 707(b)(3)"). See also, e.g., *In re Henebury*, 361 B.R. 595, 607 (Bankr.S.D.Fla.2007) (disagreeing with *Nockerts,* and stating):

("[P]ost–BAPCPA § 707(b)(3)(B) specifically delineates the pertinent inquiry as the 'totality of the circumstances of the debtor's financial situation.' . . . Thus, the debtor's total financial situation as a measure of ability to pay, and bad faith are separate and sufficient grounds for dismissal. Either ability to pay or bad conduct in connection with the bankruptcy will warrant dismissal for abuse under § 707(b)(3)"); *In re McGillis*, 370 B.R. 720, 746 n. 30 (Bankr.W.D.Mich. 2007) ("I, like the courts in *Henebury* and *[In re] Pfeifer,* [365 B.R. 187 (Bankr.D.Mont.2007),] respectfully disagree with *Nockerts*' determination that a debtor's ability to pay cannot alone warrant dismissal of a Chapter 7 proceeding unless the Section 707(b)(2) presumption also applies"); *In re Haar*, 373 B.R. 493, 499 (Bankr.N.D.Ohio 2007) ("[The] *In re Nockerts* . . . court, in finding that more than just an ability to pay must be shown to demonstrate abuse, was applying the 'old' totality of the circumstances test—that is, the pre-BAPCPA test. . . . Even with the advent of BAPCPA, it is difficult to see how, as the Debtors argue, the 'means test' of § 707(b)(2) would be rendered 'meaningless' if a case could be dismissed under § 707(b)(3) based solely upon a debtor's ability to pay. Sections 707(b)(2) and 707(b)(3) serve entirely different functions. On the one hand, the 'means test'

---

61. ER at 304–305.

62. Appellant's Brief at 16.

of § 707(b)(2) is a rigid, mechanical formula which, under certain conditions, gives rise to a presumption of abuse which the debtor may then rebut. By comparison, § 707(b)(3) is an equitable test, with it being incumbent upon the movant to sustain a showing that the necessary conditions exist to warrant dismissal").

Indeed, § 707(b)(3)(B) plainly provides that "the court ... consider ... the totality of the circumstances ... *of the debtor's financial situation* demonstrates abuse." 11 U.S.C. § 707(b)(3)(B) (emphasis added). This necessarily requires an examination of a debtors' ability to pay in addition to other factors. See *id.* at *4; see also *In re Lenton,* 358 B.R. 651, 653 (Bankr.E.D.Pa. 2006) (" '[T]otality of the circumstances' and 'financial situation' clearly encompasses a debtor's ability to pay").

 Consequently, the bankruptcy court was permitted to consider the Reeds' ability to pay in evaluating whether there had been abuse under the totality of the circumstances. The Reeds assert that mere ability to pay is insufficient to find abuse under the totality of the circumstances test, and that there "must be more." [63] The *Nockerts* court held that determining abuse under the totality of the circumstances requires looking into the debtors ability to pay along with "additional evidence." *Nockerts,* 357 B.R. at 507. In evaluating the totality of the circumstances, it considered factors such as whether "the debtor's proposed family budget is excessive or unreasonable" and whether "the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition." *Id.* at 506 (evaluating the factors outlined in *In re Green* 934 F.2d 568, 572 (4th Cir.1991) to determine

abuse under the totality of the circumstances). As noted, several other courts have concluded that ability to pay alone is sufficient to support dismissal under § 707(b)(3). This is because, as the *Henebury* court noted, after the passage of BAPCPA the language of § 707(b)(3) is *disjunctive.* 361 B.R. at 607. This indicates that a finding that the totality of the debtors' financial circumstances shows the bankruptcy proceeding is an abuse is alone sufficient to support dismissal under that section. *Id.* (" 'By listing "bad faith" and "totality of the circumstances" disjunctively, the statutory language [of § 707(b)(3)(A) and (B)] indicates that bad conduct by the debtor in connection with the bankruptcy is a ground for 707(b) relief independent of financial circumstances indicating that the debtor could repay debt,' " quoting Eugene R. Wedoff, *Means Testing in the New 707(b* ), 79 Am. Bankr. L.J. 231, 236 (Spring 2005)). See also *Haar,* 373 B.R. at 499 ("On the one hand, the 'means test' of § 707(b)(2) is a rigid, mechanical formula which, under certain conditions, gives rise to a presumption of abuse which the debtor may then rebut. By comparison, § 707(b)(3) is an equitable test, with it being incumbent upon the movant to sustain a showing that the necessary conditions exist to warrant dismissal").

 In this case, the bankruptcy court premised its dismissal under § 707(b)(3) on the fact that the Reeds' child care expenses were unreasonable—and thus that the proposed family budget was unreasonable. In calculating monthly disposable income under the Means Test, the Reeds classified child care expense of $333.66 as an "Other Necessary Expense." [64] The UST disputed not only the

---

**63.** Appellant's Brief at 22.

**64.** ER at 221.

reasonableness of the expense but the amount claimed by the Reeds, noting that their receipts showed only $293.33 in child care expenses. The bankruptcy court agreed that the expense was not reasonable, noting that Mrs. Reed was unemployed and had ample time to care for her child.[65] The court observed that it knew "of no circumstances which [would] make [such an expense] reasonable" given that Mrs. Reed had "[at least] half a day to herself every day."[66] When the claimed child care expenses were added back to monthly income, the Reeds were in a position to pay 84% of their debt over the sixty-month period of a Chapter 13 plan.[67]

Citing this fact, the bankruptcy court found that the case should be dismissed under § 707(b)(3) because the totality of the circumstances showed that the Reeds' filing was an abuse of Chapter 7.[68]

In reviewing for an abuse of discretion, the court "may only reverse if it is left with a definite and firm conviction that the bankruptcy court committed a clear error in judgment." *Haney v. Clippard*, No. 4:06CV–150, 2007 WL 781321, *3 (W.D.Ky. Mar. 9, 2007). On the present record, it is impossible to say that the bankruptcy court's conclusion regarding the Reeds' child care expense was unreasonable or an abuse of discretion.[69] The court relied on

---

**65.** ER at 300.

**66.** ER at 300.

**67.** ER at 295.

**68.** Although not addressed at the hearing, the UST also noted that dismissal under § 707(b)(3) was appropriate given the discrepancies between Schedules I and J and the many means tests the Reeds filed. As noted, Schedules I and J reflect that the Reeds have monthly disposable income of $186.46. This number was inconsistent with the figures set forth in the Reeds' original Means Test; each of the subsequent Means Tests, moreover, contained markedly varying numbers. In each of the three Means Tests that were filed, for example, the Reeds offered different numbers for "Gross Income," "Taxes," and "Health Care." (See ER at 226 (summarizing the three Means Tests).) While the first two means tests did not reference child care or health insurance expenses, the third included both. (*Id.*) Given the inconsistencies in the Reeds' filings throughout the proceeding, the bankruptcy court may well have concluded that the Reeds' filings did not "accurately reflect [their] true financial condition" *Nockerts*, 357 B.R. at 506. This would weigh in favor of a finding that the Reeds' filing was an abuse overall.

**69.** The Reeds argue that the bankruptcy court should have granted a continuance and allowed further briefing and discovery respecting the child care expense. They did not

argue before the bankruptcy court, and offer no argument here, however, that the child care expense was reasonable. What purpose additional briefing would have served is therefore unclear.

The Reeds' only argument at the hearing was that Mrs. Reed was "looking for work." (ER at 294.) Judge Riblet responded that, "[i]f she finds work, then she can jolly well get childcare but while she is not employed the Court find[s] that it is not a reasonable expense." (*Id.;* see also *id.* at 300 ("I am also ruling under (b)(3) that this is abuse because so long as Mrs. Reed is not employed and her son is in school. He's six years old. She has half a day to herself every day at least even if he's in Kindergarten that she doesn't need childcare. It's not a reasonable expense at this time").) After the bankruptcy court made this statement, the Reeds offered no facts that would have permitted the court to conclude that a continuance would have led to a different outcome. A bankruptcy court does not abuse its discretion in denying a continuance where the requesting party "[does] not indicate how additional time and investigation would yield the required evidence." *In re La Sierra Financial Services, Inc.*, 290 B.R. 718, 734 (9th Cir.BAP2002); see *In re MACadam Computer, Inc.*, No. C 06–4889 SI, 2007 WL 1864524, *5 (N.D.Cal. June 28, 2007) (holding that the bankruptcy court did not abuse its discretion in denying a continuance on the day of hearing where the moving party sought to continue the case based on a rumored settlement).

the fact that Mrs. Reed did not work and the couple's child was in school. Taking those two facts together, the court found that the stated child care expense was unreasonable, that it demonstrated abuse, and that dismissal was appropriate under the totality of the debtors' financial circumstances. Given the facts that the bankruptcy court had before it, the court concludes her decision under § 707(b)(3) was not an abuse of discretion. Consequently, the court upholds the bankruptcy court's order dismissing the case under § 707(b)(3) as well.

## III. CONCLUSION

For the reasons stated, the order of the bankruptcy court is affirmed.